473 So.2d 1253 (1985)
James Douglas HILL, Appellant,
v.
STATE of Florida, Appellee.
James Douglas Hill, Petitioner,
v.
Louie L. Wainwright, Etc., Respondent.
Nos. 65223, 65227.
Supreme Court of Florida.
June 20, 1985.
Rehearing Denied September 5, 1985.
*1254 B.V. Dannheisser, III, Sarasota, Michael J. Echevarria, Tampa, and Edward S. Stafman, Tallahassee, for appellant/petitioner.
Jim Smith, Atty. Gen. and Theda James Davis, Asst. Atty. Gen., Tampa, for appellee/respondent.
OVERTON, Justice.
James Douglas Hill, who is under a sentence of death, appeals from the trial court's denial of post-conviction relief under Florida Rule of Criminal Procedure 3.850 and separately petitions this Court for a writ of habeas corpus. We have jurisdiction, article V, section 3(b)(1) and (9), Florida Constitution. We previously granted Hill's motion for a stay of execution to afford this Court an opportunity to address fully the issues raised in this proceeding. For the reasons expressed, we find that principles of law enunciated by the United States Supreme Court require us to vacate Hill's conviction and sentence and remand with directions for the trial court to conduct a hearing on the issue of Hill's competency to stand trial and, if Hill is found competent, to proceed with a new trial.
This Court previously affirmed Hill's conviction of first-degree murder and sentence of death. Hill v. State, 422 So.2d 816 (Fla. 1982), cert. denied, 460 U.S. 1017, 103 S.Ct. 1262, 75 L.Ed.2d 488 (1983). The facts and circumstances of the crime, as they were presented to this Court at that time, are set forth in detail in that opinion.
In his motion for relief under rule 3.850, Hill challenges his conviction on the grounds that (a) the circumstances existing at trial required the court to hold a hearing on Hill's competency to stand trial and (b) the record demonstrates that he received ineffective assistance of counsel during both his trial and appeal. We need only address the issue of Hill's competency to stand trial because we find that it is dispositive of this cause.
The trial court conducted a modified evidentiary hearing on Hill's competency to stand trial, during which he heard testimony from Hill's trial counsel and defense investigator, but directed that all other testimony be submitted in the form of depositions. At the conclusion of the hearing, the court summarily denied Hill's motion for post-conviction relief.
The factual circumstances that were not presented in the initial court proceedings and that are critical to the issue of Hill's competency to stand trial reflect the following unrefuted facts.
Approximately five years prior to Hill's arrest on the murder charge, he was diagnosed as suffering from grand mal epileptic seizures. At that time, both the treating physician and the admitting physician concluded that Hill suffered from mental retardation.
In 1972, Hill was placed in a special education program for mentally handicapped children in the Hillsborough County school system. One of his teachers testified that Hill had been her student for two years. During this period of time she observed that Hill was child-like and had a severe speech problem which made it difficult for him to communicate with others. She stated that he was an "easy scapegoat" who, because of his speech impediment, was often blamed for things he did not do and, when accused, Hill would often admit guilt. The teacher stated that this acquiescent behavior was a characteristic trait of some mentally retarded students. The dean of students at the school corroborated the teacher's testimony, characterizing Hill as educable mentally handicapped with a communication problem. He also repeated the teacher's assertion that Hill was unable to defend himself when wrongly accused by other students.
While he was awaiting trial, Hill was evaluated by a county jail nurse who noted that he appeared retarded and recommended further evaluation to determine if Hill was suicidal. He was referred to the *1255 Hillsborough County Community Mental Health Center, where he was evaluated by a mental health technician and a psychiatrist. They recommended that Hill undergo psychiatric and psychological evaluation, but, for some unexplained reason, this was not done.
The defense investigator testified that he had difficulty "extracting sufficient information from [Hill] to go out there and do an investigation." He also stated that Hill was unable to assist him in investigating the case in "a normal manner," explaining that Hill could not, for example, relate concepts of time as he was unable to distinguish between three weeks and three months.
At trial, Hill exhibited unusual behavior, indicating his lack of appreciation of the nature of the proceedings against him. At one point he attempted to walk out of the courtroom because the "jury was laughing at him." He also stated that he thought the trial was a "game." In addition, he conversed and laughed with friends in the courtroom despite his attorney's instructions to the contrary.
Subsequent to trial, and in preparation for this post-conviction relief proceeding, two mental health professionals examined Hill independently of each other, and each found Hill to have an I.Q. of 66. This score placed Hill in the lowest one percent with respect to the general population. One psychologist found the following:
Neuropsychological screening supports a diagnosis of organic brain damage which is primarily manifested in deficits of memory, reasoning and conceptualization. The results of the WMS indicate a memory quotient of 48 (average = 100), a score even lower than that expected from an individual with Mr. Hill's I.Q. He was unable to recall any details from two simple stories read to him ninety minutes earlier, indicating a significant memory deficit, particularly for verbally presented material. His presentation of his history supports these deficits as he was unable to provide accurate information concerning events in the past.
... [T]he current psychological evaluation certainly reveals that Mr. Hill is a mentally retarded individual (I.Q. = 66) who would not have the ability to design, execute or cover up any detailed plans... .
Current testing shows that Mr. Hill's recall capacity is inaccurate for events occurring from ninety minutes to twenty-four hours in the past. It is even more significantly impaired for events and details occurring more remotely. Thus, it is highly unlikely that Mr. Hill possessed the capacity to testify relevantly at the time of his trial or to adequately assist his attorney in all phases of the defense preparation.
The second mental health professional, a clinical psychologist, stated that "James was about as incompetent to stand trial, in my professional opinion, as anyone that I have seen except for several people who are actively hallucinating at the time of the interview." He testified that, based upon his reading of the trial transcript, Hill "did not have the ability to testify with coherence, relevance, and independence of judgment, and that Hill was unable to disclose pertinent facts to an attorney, communicate relevantly to an attorney, assist in planning a defense, or to realistically challenge prosecution witnesses." He further testified that he was "certain that James did not have a rational as well as a factual understanding of the proceeding." He concluded that Hill was not competent to stand trial because he did not have the ability or capacity to testify relevantly at the time of his trial.
A psychological evaluation of Hill by a prison psychologist and classification specialist reflected that Hill was of borderline intelligence, illiterate, and epileptic. His report stated that Hill was unable to give reliable information about such a simple inquiry as place of birth. The psychologist stated that Hill "seemed to have difficulty understanding some questions during the current interview which had to then be repeated for him.... Hill appears to be extremely naive, emotionally and physically *1256 immature, and looks much younger than his actual age." This psychologist also found that it was doubtful Hill had the ability for abstract thinking, and concluded that Hill could probably be easily led by others. The report further reflects that Hill was tested on the beta I.Q. test, which is ordinarily used for testing children, and received a score of 79. According to the psychologist, this score placed Hill in the borderline range of intelligence. The beta test is different from the Wechsler test utilized by the other two psychologists who examined Hill for his competency to stand trial and, according to their testimony, is less valid than the Wechsler test.
The record further reflects that Hill's trial counsel did not understand the distinction between competency to stand trial and competency at the time of the offense under this state's modified M'Naghten rule. Hill's trial counsel testified that he resolved the issue of Hill's sanity by interviewing Hill and his family. He stated he was able to determine that Hill knew right from wrong and therefore eliminated the possibility of an insanity defense as well as any claim that Hill was not competent to stand trial. During his testimony at the post-conviction relief proceeding, Hill's trial counsel made it clear that his determination of Hill's competency to stand trial was based upon whether Hill knew right from wrong, as reflected by his statement, "Obviously, you are saying as far as right from wrong, competency question whether he knows right from wrong, and if not then obviously he is not competent to stand trial."
The principles of law which compel us to vacate Hill's conviction and direct a hearing to determine his competency to stand trial have been clearly set forth by the United States Supreme Court in its decisions in Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956); Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); and Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). It is appropriate to review these federal decisions and the factual circumstances that resulted in the principles of law that we must apply to this case.
The circuit court of appeals decision in Bishop v. United States, 223 F.2d 582 (D.C. Cir.1955), reflects that Bishop was convicted of first-degree murder and sentenced to death in 1938. Two years later, he was found insane, and, in 1952, the president commuted his sentence to life imprisonment. Within a year he regained his sanity and filed post-conviction relief proceedings in the trial court, asserting, in part, that he was of unsound mind at the time of the trial. The issue was whether, at the time of trial, Bishop was mentally competent to understand the proceeding against him and assist in his defense. Id. at 584. The trial court found that Bishop testified coherently and was adroit in explaining eye-witness testimony; that he withstood severe and long cross examination; and that approximately one month before the trial a psychiatric evaluation determined that Bishop had no mental disorder. Id. at 585. On the basis of this evidence, the court of appeals held that there was substantial evidence upon which the trial court could find that Bishop was competent to stand trial. The United States Supreme Court, however, found this evidence insufficient and, in a short per curiam opinion, reversed, stating, "The judgment is vacated and the case is remanded to the District Court for a hearing on the sanity of the petitioner at the time of his trial." 350 U.S. 961. This decision stands for the principle that the trial court must conduct a hearing on the issue of a defendant's competency to stand trial when there are reasonable grounds to suggest incompetency.
To fully understand the United States Supreme Court decision in Dusky v. United States, it is again necessary to examine the lower court decision reported as Dusky v. United States, 271 F.2d 385 (8th Cir.1959). It reflects that Dusky was charged with kidnapping. The trial court, recognizing that there was a question with regard to Dusky's competency to stand trial, directed *1257 a psychiatric examination. The examination revealed that the defendant was oriented as to time and place, understood what he was charged with, knew that if there was a trial it would be before a judge and jury, and knew that if he was found guilty he would be punished. The report also related, however, the opinion of the examining psychiatrist that the defendant's condition was such that he was unable to understand the nature of the proceedings with reference to the charges against him and was unable to properly assist counsel in his defense. The trial judge, distinguishing competency at the time of the offense from competency to stand trial, noted that the defendant was oriented as to time, place, and person, and appeared to him to be able to assist counsel in his own defense, and concluded that he was competent to stand trial. On appeal before the United States Supreme Court, the solicitor general conceded error, admitting that the standard applied by the circuit court was incorrect, and suggested to the Court the appropriate test for determining competency. The United States Supreme Court agreed, stating:
We also agree with the suggestion of the Solicitor General that it is not enough for the district judge to find that "the defendant [is] oriented to time and place and [has] some recollection of events," but that the "test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding  and whether he has a rational as well as factual understanding of the proceedings against him."

362 U.S. at 402 (emphasis added). This is the test uniformly applied in this country to determine competency to stand trial. This Court has implemented this test by the adoption of Florida Rules of Criminal Procedure 3.210 and 3.211. See also A.B.A. Mental Health Standard 7-4.1 and commentary following that standard.
The facts in Pate v. Robinson reflect that the defendant was convicted of murder. During trial, he asserted that he was insane at the time of the murder and presented evidence concerning his competency. He did not, however, directly seek a hearing on his competency to stand trial. The Illinois Supreme Court affirmed the conviction and held that no hearing on mental capacity was properly requested and that the evidence did not necessitate a hearing. People v. Robinson, 22 Ill.2d 162, 174 N.E.2d 820 (1961). The United States Supreme Court denied certiorari review. Robinson v. Illinois, 368 U.S. 857, 82 S.Ct. 97, 7 L.Ed.2d 55 (1961). The defendant subsequently filed a post-conviction petition for habeas corpus in the United States District Court. The petition was denied without a hearing and the United States Circuit Court of Appeals reversed. United States ex rel. Robinson v. Pate, 345 F.2d 691 (7th Cir.1965). In so doing, the circuit court of appeals determined that the defendant was entitled to a hearing on the issues of sanity at the time of the offense and competence to stand trial. The United States Supreme Court accepted jurisdiction and, in affirming, held, "We believe that the evidence introduced on Robinson's behalf entitled him to a hearing on this issue. The court's failure to make such inquiry thus deprived Robinson of his constitutional right to a fair trial." 383 U.S. at 385, 86 S.Ct. at 842 (footnote and citation omitted). The Court rejected the reasoning of the Illinois Supreme Court that the evidence "was not sufficient to require a hearing in light of the mental alertness and understanding displayed in Robinson's `colloquies' with the trial judge." Id. (citation omitted). In its opinion, the Court stated that, although "Robinson's demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue." Id. at 386, 86 S.Ct. at 842. (citation omitted).
The significance of the Robinson decision is that it places the burden on the trial court, on its own motion, to make an inquiry into and hold a hearing on the competency of the defendant when there is evidence that raises questions as to that competency. Further, the Robinson court recognized that mental alertness at trial is not *1258 sufficient to eliminate the need for a hearing if other information brings a defendant's competency into question. It is also important to recognize that Robinson involved a post-conviction relief proceeding in which the United States Supreme Court expressly rejected the argument that "it would be sufficient for the state court to hold a limited hearing as to Robinson's mental competence at the time he was tried in 1959." 383 U.S. at 387, 86 S.Ct. at 843. The Court expressed the view that there was a need for the concurrent determination of competency to stand trial at the time a defendant is tried and stated, "[W]e have previously emphasized the difficulty of retrospectively determining an accused's competence to stand trial." Id. (citing Dusky). The Court then determined that the state could retry Robinson with the understanding that, if a sufficient doubt as to his present competency was raised, his competency would be determined before the commencement of trial. Id.
In Drope v. Missouri, Drope was indicted with two others for the forcible rape of his wife. Prior to trial, defense counsel filed a motion for continuance so that Drope could be examined and receive psychiatric treatment. 420 U.S. at 164, 95 S.Ct. at 900. Attached to the motion was a psychiatric report containing illustrations of petitioner's strange behavior that had prompted the request for treatment. The motion was denied and the case proceeded to trial. The wife testified regarding Drope's abusive behavior and stated that her husband had tried to kill her on the Sunday prior to trial. On the second day of trial, Drope shot himself and his counsel moved for a mistrial. The trial court denied the motion. Drope was convicted and filed a motion for new trial. The basis of this motion was that the trial court had erred by proceeding with the trial when there had been no evidence that Drope's absence from the trial was voluntary. The state presented evidence that, upon Drope's admission to the hospital, Drope stated that he had shot himself because of some problem with the law and because he was supposed to go to court for rape and he didn't do it. The trial judge denied the motion, finding that Drope's absence "was due to his own voluntary act in shooting himself; done for the very purpose of avoiding trial." Id. at 167, 95 S.Ct. at 901 (citation omitted). The court concluded that Drope had the burden of proving that his absence was not voluntary. The denial of the motion was affirmed by the Missouri Supreme Court. State v. Drope, 462 S.W.2d 677 (Mo. 1971).
Drope subsequently filed a motion for post-conviction relief, claiming that the court violated his constitutional rights by not ordering a pre-trial psychiatric examination and by proceeding to trial without his presence. Expert psychiatric witnesses testified that "there was reasonable cause to believe that a person who attempted to commit suicide in the midst of a trial might not be mentally competent to understand the proceeding against him." 420 U.S. at 169, 95 S.Ct. at 902. The trial court denied the motion and the Missouri Court of Appeals affirmed, holding that Drope's "suicide attempt did not create a reasonable doubt of his competence as a matter of law," Drope v. State, 498 S.W.2d 838, 842, and concluded that the hearings were properly conducted under the dictates of Pate v. Robinson and Dusky v. United States. The United States Supreme Court, in a unanimous opinion, reversed the Missouri court, reaffirmed Dusky and Robinson, and concluded that the circumstances presented mandated a hearing on the competency of the defendant to stand trial and required the vacation of Drope's conviction and sentence. 420 U.S. at 178-82, 95 S.Ct. at 906-09. The Supreme Court refused to remand the cause for a retroactive determination of the defendant's competency to stand trial, stating:
The question remains whether petitioner's due process rights would be adequately protected by remanding the case now for a psychiatric examination aimed at establishing whether petitioner was in fact competent to stand trial in 1969. Given the inherent difficulties of such a nunc pro tunc determination under the *1259 most favorable circumstances, see Pate v. Robinson, 383 U.S., at 386-87 [86 S.Ct. at 842-43]; Dusky v. United States, 362 U.S., at 403 [80 S.Ct. at 789], we cannot conclude that such a procedure would be adequate here.
420 U.S. 183, 95 S.Ct. at 909 (citation omitted).
This Court has followed the principles of law set forth in Bishop, Dusky, Robinson, and Drope in our decisions in Jones v. State, 362 So.2d 1334 (Fla. 1978); Lane v. State, 388 So.2d 1022 (Fla. 1980); State v. Green, 395 So.2d 532 (Fla. 1981); Christopher v. State, 416 So.2d 450 (Fla. 1982); and Scott v. State, 420 So.2d 595 (Fla. 1982), and by our adoption of the Dusky test in our Rules of Criminal Procedure 3.210 and 3.211.
In the present case, the state argues that the testimony of the investigating police officers that they had no problem communicating with Hill and the prison psychologist's report sufficiently rebut the evidence presented by the defense witnesses and the contention that Hill was entitled to a hearing on his competency to stand trial. The principles enunciated in Dusky and Robinson require the rejection of this argument. When the defense attempted to present testimony regarding the need for a hearing on Hill's competency to stand trial, the trial judge stated that he did not believe that any of the proposed evidence needed to be heard because the issue of competence was a judgment call to be decided by the defense attorney. He allowed the defense to present the testimony of the trial attorney and defense investigator and directed that all other testimony should be submitted by deposition. Further, the judge stated:
[I]f you have eighty-three that examined the defendant and found him incompetent after the trial, it still comes to a question of whether or not what the lawyer thought.
... .
I am not going to review the depositions of these people because I feel the law is it is a judgment call for the lawyer, and it doesn't matter how many people you bring in here after the fact, the fact of finding of guilt by the jury. It is still a judgment call by the lawyer.
The trial court failed to properly address the issue of whether the evidence necessitated a hearing on Hill's competence to stand trial. We totally reject the contention of the state that there was no evidence before the court that was sufficient to raise a bona fide doubt as to Hill's competency to stand trial. We find that any objective evaluation of the facts in this case establishes beyond question that a hearing on Hill's competency to stand trial was constitutionally required and that the failure to do so deprived him of the right to a fair trial. As was determined in Drope and Robinson, this type of competency hearing to determine whether Hill was competent at the time he was tried cannot be held retroactively because, as was stated in Drope, "a defendant's due process rights would not be adequately protected" under that type of procedure. 420 U.S. at 183, 95 S.Ct. at 909. Such a hearing should be conducted contemporaneously with the trial. Robinson, 383 U.S. at 387, 86 S.Ct. at 843. We find that neither the Third Circuit Court of Appeals decision in United States ex rel. McGough v. Hewitt, 528 F.2d 339 (3d Cir.1975), nor the First District Court of Appeal decision in State v. Williams, 447 So.2d 356 (Fla. 1st DCA 1984), applies under the facts of this cause.
In view of our holding, it is not necessary for us to address appellant's claims of ineffective assistance of counsel. We note, however, that the record demonstrates a failure of trial counsel to understand the law and the rules regarding the issue of competency to stand trial. The record also reflects that counsel's investigation and representation at trial leave a number of questions unanswered. Russell Jackson and Daniel Munson, who were originally suspects in this crime, were both key witnesses for the state. Although counsel introduced evidence that Jackson and Munson received immunity from prosecution *1260 for the murder, he did not bring out at trial that Jackson had a substantial criminal history and that police had dropped pending burglary and grand larceny charges in exchange for his testimony. Similarly, counsel did not elicit the extent of Munson's arrest record, nor did he bring out the fact that Munson had given a statement that implicated four or five men in the murder, but not Hill. In addition, there was evidence of Winston and Carlton cigarette butts found near the victim's body, but defense counsel did not show that Hill smoked Marlboros and Munson smoked Winstons. Defense counsel also failed to show that sunglasses found near the victim were of a type worn by Munson and that Hill did not wear sunglasses. Further, counsel failed to incorporate, in a motion for new trial, the fact that after the trial, but before sentencing, a witness told defense counsel that Jackson told him that Hill "did not kill the girl but I know who did. James was framed ... but if I tell who did it they would put me away." Finally, we note that there were two young women available who would have testified that Hill had saved one of them from an attempted sexual battery by Jackson.
As previously noted, we find the controlling issue to be the failure of the trial court to conduct a hearing on Hill's competency to stand trial. Under the well-established principles of law regarding competence to stand trial, the factual circumstances in this case clearly require such a hearing. Accordingly, we vacate the conviction and sentence and remand with directions that the state may proceed to re-prosecute the defendant after it has been determined that he is competent to stand trial.
Because of our holding, the petition for habeas corpus is dismissed as moot.
It is so ordered.
BOYD, C.J., and McDONALD, EHRLICH and SHAW, JJ., concur.
ADKINS and ALDERMAN, JJ., dissent.