642 So.2d 1142 (1994)
Timothy FUSE, Appellant,
v.
STATE of Florida, Appellee.
Nos. 92-2690, 92-2691.
District Court of Appeal of Florida, Fourth District.
September 21, 1994.
*1143 Mark Wilensky of Levy, Kneen, Boyes, Wiener, Goldstein & Kornfeld, P.A., West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and John Tiedemann, Asst. Atty. Gen., West Palm Beach, for appellee.

ON MOTION FOR REHEARING
WARNER, Judge.
We withdraw our previous opinion and substitute the following in its place.
On this appeal from an order denying a motion for post-conviction relief from a second degree murder conviction, appellant claims that the court erred in failing to conduct a hearing, on its own motion, at the time of trial to determine whether appellant was competent to stand trial for the charges against him. The trial court denied the motion. Citing Hill v. State, 473 So.2d 1253 (Fla. 1985), appellant contends that there was sufficient evidence before the trial court at the time of trial to necessitate a competency hearing. Appellant also claims that he was denied effective assistance of counsel as to a separate robbery conviction, because his trial counsel failed to investigate his competency to stand trial. We disagree and affirm the trial court on both issues.
Hill holds that where there is evidence that raises questions as to the defendant's competency to stand trial, the burden falls on the trial court to conduct a competency hearing to assure that defendant is not denied a fair trial by reason of his incompetency to understand the proceedings and assist in his defense. The question presented in this case is whether there was sufficient evidence before the trial court in 1987 to raise the issue of competency to stand trial.
A review of the facts of Hill and Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), where the Court determined that a competency hearing should be held, is illuminating. In Robinson, the defense contended at Robinson's murder trial that he was insane both at the time he killed his wife and up to the trial. Four witnesses testified without contradiction that they believed him to be insane. The record also revealed that Robinson had a long history of disturbed behavior commencing with a childhood head injury. He had been hospitalized on several occasions for psychiatric disturbances. *1144 And he had shot and killed his son and tried to commit suicide several years prior to killing his wife. The Supreme Court concluded that the evidence before the court was sufficient to raise a claim that he was incompetent to stand trial even in the face of his apparent mental alertness at trial.
In Hill, the defendant was mentally retarded. While he was in jail awaiting trial, a county jail nurse noted that Hill appeared retarded and recommended further evaluation, which was not done. At the post-conviction relief hearing the defense investigator testified that Hill was difficult to communicate with and was of no help in preparing his defense. Furthermore, at trial Hill exhibited unusual behavior. Finally, after trial Hill was evaluated and mental health professionals testified as to his low I.Q. and his inability to recall details of events even ninety minutes in the past. In addition, one of the mental health experts opined that Hill could not cooperate with his attorney, assist in his defense, or have any rational or factual understanding of the proceedings.
Not only did Hill exhibit many signs of incompetency, the record revealed that his trial counsel did not have an understanding of the difference between competency to stand trial and competency at the time of the offense. Moreover, the trial court felt that the determination of competency to stand trial was a judgment call to be made by the attorney, not the judge. Noting that the judge has an independent duty under both Robinson and Florida Rule of Criminal Procedure 3.210 to determine the competency of the defendant to stand trial, the supreme court vacated Hill's conviction and sentence, finding that from the evidence there was a sufficient doubt raised as to Hill's competency to stand trial to have required a hearing. It remanded the case to allow a prosecution after a determination that Hill was competent to stand trial.
The facts of the present case are considerably different. Fuse, who was fifteen at the time of the offense in 1985, had a lengthy record in the juvenile system (14 arrests) and thus had significant contact with the judicial system prior to his arrest for the murder and robbery for which he seeks relief from his conviction. The record reveals that the state and Fuse's trial counsel, Barry Krischer, stipulated to the appointment of Dr. McKinley Cheshire to examine Fuse with respect to his current competency to stand trial. Dr. Cheshire was to examine him regarding the six areas of competency identified in Rule of Criminal Procedure 3.211(a)(2). However, Dr. Cheshire's report was to be sent solely to defense counsel. Based upon Dr. Cheshire's evaluation, Krischer moved for the appointment of a second expert, Dr. Stephen Alexander, which motion was granted. Dr. Alexander performed extensive testing on Fuse. His reports also were supplied only to defense counsel. Another psychological expert was also appointed to examine Fuse, but it is unclear from the record whether this examination took place.
Armed with the expert testimony, Fuse challenged his competency to understand the Miranda warnings given to him in an effort to suppress his incriminating statement made to police. Both Dr. Cheshire and Dr. Alexander testified at the suppression hearing, and Dr. Alexander testified at the trial as well. Both doctors agreed that Fuse was retarded and had a very low I.Q. His academic level was far below his age level. However, both doctors testified that in their examination of him, Fuse's demeanor was appropriate, as were his responses to the questions asked. Dr. Alexander also testified that the testing showed that he had no personality disorders or mental or emotional disturbances, and while the low I.Q. (about 57) revealed that Fuse had a receptive ability of a child just over five years of age, his socialization development took him beyond that I.Q. ranking. When testing Fuse, Dr. Alexander found him alert, oriented, attentive, with an intact memory, having thoughts which were clear and coherent, and displaying appropriate emotions. And while he was intellectually limited, he was otherwise a normal young man.
At trial witnesses who were acquainted with Fuse testified that although he was slow in learning, he was "just like one of the guys" and that he was perfectly capable of functioning in life. He was able to get along on his own. There is no indication of any behavior *1145 of Fuse at trial which would alert the judge that Fuse was incompetent to stand trial.
Fuse was convicted of second degree murder, and on his motion for mitigation of sentence heard in 1989 after the affirmance of his conviction and sentence on appeal, the trial court specifically found that "he was and is competent for juvenile and adult court."
Fuse filed a motion for post-conviction relief contending among other things that his counsel was ineffective in failing to investigate the claim of incompetency and that the trial court erred in failing to conduct a competency hearing when it had evidence to raise a doubt of Fuse's competency. By the time the hearing on the motion was held, Fuse had dropped his claim as to ineffectiveness of counsel in the trial which resulted in the murder conviction but retained his claim that the trial court should have held a sua sponte hearing to determine his competency to stand trial.
Dr. Alexander testified at the hearing in 1992 that in his professional opinion Fuse was incompetent to stand trial. He explained that he never testified to that opinion at the original trial because no one asked him. However, as to the specific factors mentioned in the rule, Alexander testified that Fuse had a "marginal" ability to understand and appreciate the charges against him; that he did not understand the range and nature of the penalties; that he had a marginal ability to understand the legal process; that he had a simple ability to disclose to his attorney facts pertinent to the proceeding; that he could manifest appropriate courtroom behavior although he could not pay attention; and that he could have testified simplistically but not in great detail. (Fuse did not testify at his trial.) And his finding that Fuse was not competent was hedged somewhat by his statement that while he was not competent on enough of the issues to be able to assist in his defense, he would be competent on certain facts in a marginal sense. No other testimony was presented by Fuse in 1992 of any other fact which supported his various motions for post-conviction relief.
The facts of this case are far different from Hill or Robinson. Perhaps the only common thread between Hill and this case is that both defendants had low I.Q.'s. There are no similar facts in Robinson. And unlike Robinson and Hill, Fuse's attorney had the opportunity to have Fuse examined at least twice, once on the very issue of competency to stand trial. That report was delivered to him, and based on its content further tests were performed but no request for a competency hearing was made. While Hill states that it should not be the defense attorney's sole determination whether to raise incompetency to stand trial, it is significant that he raised the issue, obtained the evaluations, and then did not request a hearing on the issue. Moreover, unlike the trial attorney in Hill, Mr. Krischer knew exactly what the standard for competency to stand trial was as is reflected in his motions for determination of competency. In Hill no competency evaluation was made of the defendant until after his conviction, while in the instant case two and possibly three competency evaluations were made of defendant. They were not provided to the court then, nor were they provided to the court on the postconviction relief proceedings because of the assertion of attorney/client privilege.
Dr. Alexander is the only witness to testify that Fuse was not competent, but his testimony is not without qualification. In fact he actually testified that Fuse was marginally competent. Moreover, although he testified both at the suppression hearing and at trial, his testimony then did not provide evidence that Fuse was incompetent to stand trial. He testified that aside from his intellectual limitations, Fuse was a normal young man. And unlike Hill, Alexander found that Fuse had an intact memory and could respond appropriately to questions. Thus, his recent testimony regarding competency to stand trial is contradicted to an extent by his own trial testimony. As with any other proceeding, we will defer to the trial court on evidentiary issues where the testimony is contradictory.
Given the fact that the trial attorney requested and obtained two competency evaluations from experts who testified at hearings before the trial judge, given the testimony at trial including the extensive psychological *1146 testimony, and given the fact that there is no evidence whatsoever of unusual behavior which would have alerted the court as to the defendant's incompetency as there was in Hill, we cannot find that the trial court erred in failing to hold a hearing, on its own motion, on the defendant's competency to stand trial. About the most which can be said of the evidence is that Fuse had a low I.Q. and has difficulty with abstract thinking. We do not believe that Hill set a standard that anyone with a low intelligence is automatically suspect as being legally incompetent to stand trial. There must be other factors, as there were in Hill and Robinson, showing lack of competency. There were none here.
The burden on the trial court is a great one to assure that the defendant is not tried while incompetent, for to do so would be to deny him his constitutional right to a fair trial. Certainly, given the Hill standard, trial courts should be very diligent in ascertaining competency when evidence suggests that a defendant may not have sufficient understanding of the proceedings. However, in this case we are satisfied that the defendant was not denied his right to a fair trial and that the trial court did not have before it sufficient evidence to raise a doubt as to Fuse's competency to stand trial.
As to the claim of ineffectiveness of counsel on the robbery conviction, we affirm based on the cause and prejudice standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel for appellant in the robbery case did not testify at the postconviction relief hearing. Even if counsel did not investigate whether appellant was incompetent, the trial court found that appellant's incompetency to stand trial was not proved, and the record we have of the case reveals nothing which would have alerted the trial judge that appellant was unable to understand or participate in the proceedings. Therefore, appellant was not prejudiced by counsel's failure to investigate.
AFFIRMED.
KLEIN and PARIENTE, JJ., concur.