PARIENTE, Judge,
specially concurring.
Defendant was tried twice and convicted twice for the murder of Eric Golden, an attorney who had represented defendant’s former wife in bitter divorce proceedings. Having succeeded in obtaining a reversal of his first murder conviction because he was denied the right of self-representation which the United States Constitution affords to each mentally competent defendant, defendant now seeks to overturn Ms second murder conviction based on the contention that he was not even competent to assist his counsel at the second trial.
Although admittedly circumstantial, the state’s case hinged on its theory that defendant had murdered Golden for the aggressive, ruthless and unyielding manner in which he had handled the Kleinfeld divorce, including filing contempt charges which resulted in defendant’s being jailed and having his assets frozen. Defendant made no secret of Ms hatred for Golden. The state’s case included evidence that defendant, while in jail as a result of the contempt charges, had threatened to kill both Golden and Judge Abel, who presided over the divorce proceedings. Golden died in a particularly brutal and humiliating manner of two gunshot wounds — one to the back and a second to the rectum.
Defendant was originally convicted of first-degree murder of Golden on July 29, 1988.[1] Despite being granted a new trial on the basis that Ms request for self-representation had been derned, defendant proceeded to the second trial held in February of 1993 represented by counsel. Following Ms conviction for first-degree murder for a second time, defendant’s attorneys, moved for a new trial claiming tMs time that defendant was incompetent during the second trial in that he was unable to consult with counsel and assist in preparing Ms defense.
Although defendant had been found competent to represent himself and to proceed in the first trial, competent to proceed with sentencing after the second trial,[2] and apparently competent at the commencement of the second trial, defendant’s attorneys posit that *1060 during the course of the second trial, or at least portions of the trial, defendant became incompetent as a result of the combined effect of his advanced age, the stress of the trial and medication he was taking to reduce his anxiety. Further, and central to the main issue on appeal in this case, defendant maintains that the trial court reversibly erred when it faded to conduct a hearing on its own motion on defendant’s competency. According to defendant, the trial court’s failure to conduct a hearing during the second trial, when it should have had a reasonable suspicion of defendant’s incompetency, requires a reversal and the granting of a third, new trial.
Basic constitutional tenets, incorporated in Florida Rule of Criminal Procedure 3.210(a), prohibit criminal proceedings from continuing when an individual is mentally incompetent at any material stage. To do otherwise would deny a defendant his constitutional right to a fair trial. Hill v. State, 473 So.2d 1253 (Fla.1985); Fuse v. State, 642 So.2d 1142 (Fla. 4th DCA 1994). The test uniformly applied to determine competency to stand trial is whether a defendant has “sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.” Hill, 473 So.2d at 1257 (citing Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825 (1960)).
In reliance on United States Supreme Court precedent, our supreme court in Hill reiterated that where a trial court has reasonable grounds to suggest that a defendant is not mentally competent to proceed, the burden falls on the trial court to conduct a competency hearing to assure that the defendant is not unconstitutionally denied a fair trial by prosecuting him while incompetent. 473 So.2d at 1256; see also Fla.R.Crim.P. 3.210(b). However, a difficult client who is prone to courtroom outbursts and who openly displays displeasure with his counsel does not in itself give rise to the necessity for the court to inquire into a defendant’s competency. See Koon v. Dugger, 619 So.2d 246, 250 (Fla.1993).
The state contends that we are not dealing with a defendant who was mentally incompetent but with a defendant who has a well-documented, difficult personality with a history pattern of disruptive behavior. The state argues, and the trial court found, that defendant’s frequent outbursts during trial and his bizarre and anti-social conduct were a product of this difficult personality. Based on its observations during this second trial, a previously aborted trial over which it presided, see State v. Kleinfeld, 587 So.2d 592 (Fla. 4th DCA 1991), and a review of the proceedings from the first trial, the trial court found that, while defendant was prone to outrageous and inappropriate antics, there was no reasonable indication that he was incompetent. See Koon, 619 So.2d at 250.
The record reveals that defendant, who was born in 1915, is a college graduate with a degree in accounting. He performed accounting and tax work until he retired at age 65, but even at the time of the post-trial hearing at which he testified, he was still involved in buying and selling securities and able to remember the names and current selling prices of his multiple investments. Yet he testified at the post-trial hearing in support of his motion for new trial that he was unable to remember anything about the three and a half week second trial due to the medication he was taking. A psychologist, who examined defendant a month after the trial, described him as “explosive and labile, up and down from the chair, ranting and raving all over the room.” She opined that defendant had been borderline competent, but had broken down under the stress of trial exacerbated by the medication and his age.
An expert medical doctor for the defense, who also testified at the post-trial hearing, opined that the multiple medications defendant was taking during trial for his various medical conditions, together with the tranquilizer Xanax, could have produced a synergistic effect, causing defendant to be agitated, depressed and confused and to experience rage, hostility, paranoia and hallucinations. However, defendant’s own treating doctor discounted this theory and also testified that while seeing defendant frequently in the months *1061 leading up to trial, he never observed any adverse symptoms or received complaints of adverse symptoms from defendant about the drugs.
In denying defendant’s motion for new trial, the trial court observed that:
Even though his outbursts were unusual in the sense that they were not in conformity with normal courtroom procedure, decorum, these outbursts pretty much amounted to, I didn’t do it and, the prosecution is out to get me and these witnesses are lying....
Mr. Kleinfeld, I think, has a forceful personality. Mr. Kleinfeld is used to being in charge of whatever procedure there is. He found himself not in charge here and I don’t mean in the courtroom but I mean not in charge of these proceedings....
... Mr. Kleinfeld found himself in a posture, I believe, of where he wasn’t in control and he had, throughout his life, been in control and people really did what Mr. Kleinfeld said that he ought to do throughout his life, and I find that he found himself in this situation he wasn’t in control and it was alarming to him.
I think these outbursts were simply manifestations of Mr. Kleinfeld’s personality. He’s a stubborn man, quite frankly, I find, from the evidence here presented and from the evidence that I saw throughout the trial, he’s a stubborn man who simply wasn’t going to sit still and be railroaded, in his judgment, in his words, in fact.
[[Image here]]
I think Mr. Kleinfeld is a very intelligent person. I think at times Mr. Kleinfeld is a show boat. But even during those times I don’t feel Mr. Kleinfeld demonstrated any irrational behavior.
Mr. Kleinfeld then [during trial] and now, I think, is a very smart man, quite frankly, and I don’t find from the evidence here presented and what I have observed before that there was a reasonable ground for me to believe during the trial or anytime that Mr. Kleinfeld wasn’t competent as the law defines competency. I think at all times he was capable of, although he may have chosen not to, communicate with his attorneys. I think that he at all times demonstrated, even in his outbursts, he had a rational understanding of the proceedings against him....
These observations were consistent with what the trial court in fact stated on the record during the second trial:
[W]hile I think he’s probably a tough client to have, I don’t find, from what I’ve heard here, that he’s incompetent. In fact, he seems to be — he seems to know precisely what’s going on and is terribly disruptive. ... I think he just has a personality that’s going to continue to be disruptive if we allow him to sit in this courtroom.
This observation was made after the defense attorney advised the trial court that defendant had received an extra dosage of Xanax and was becoming “irrational and emotional.” At the same point in time, defendant’s present wife, who had nursing training, advised the trial court:
He’s fully competent. He knows everything that’s going on. There is nothing wrong with his mind.
Defendant’s attorney also advised the trial court at that time that:
I’m not going to say that he’s not competent because I believe the psychologists and psychiatrists that examined him did, in fact, indicate that he was competent from a legal standpoint, i.e., he knew what the charges were and he would be able to assist counsel.
Although defendant’s attorney moved for several mistrials during the trial, he never requested a competency examination and affirmatively represented that psychological examinations by psychiatrists and psychologists indicated defendant was competent. While Hill holds that the trial court has an independent responsibility to question a defendant’s competency and that it cannot solely rely on a defense attorney’s determination, the attorney’s observations and representations should not be disregarded, especially where previous competency examinations have been conducted. See Fuse, 642 So.2d at 1146.
As with any other proceeding, we will defer to the trial court on evidentiary issues *1062 where the testimony is contradictory. Fuse. The trial court’s first-hand observations of defendant’s conduct during trial, rather than the cold record, places the trial court in a superior vantage point.
One cannot read the voluminous record without concluding that defendant is indeed a very angry man with a difficult and disruptive personality. During the testimony of each of several witnesses, defendant would call the witness a liar. While the nature of these outbursts demonstrated inappropriate courtroom decorum, the timing was appropriate in the sense that the outbursts came following adverse testimony from various prosecution witnesses. The other type of outbursts which punctuated this second trial included advising the trial court, “that’s not evidence, that’s garbage” and calling Florida “the cesspool of the country.” At another point, defendant told the trial court, “Birds of a feather flock together. You circuit judges work together.” He used racial epithets when frustrated by his own attorney’s decisions. However, as the state points out, many, if not all, of the most outrageous comments were made out of the presence of the jury, further supporting the trial court’s observations that defendant knew exactly what he was doing.
While defendant asserts that his condition had deteriorated from the first trial, there is ample evidence supporting the conclusion that this conduct is part of a pattern similar to that exhibited at his first trial. At the first trial, defendant’s conduct was labeled as “quite unusual.” He engaged in calling witnesses liars and dubbed the prosecutor an “Anti-Christ ... angelic assassinator.” His attorneys advised the trial court that he was sane, but they were unsure of his competency because he was unable to maintain proper courtroom decorum. Three court-appointed psychiatrists who examined defendant, however, determined he was competent to proceed at that time and the trial court concluded that but for defendant’s ill health, he was competent to represent himself.
Defendant’s tendency to rant and rave, as observed by defendant’s psychologist post-trial, is the same type of conduct that he exhibited as far back as his divorce proceedings. Judge Abel, who testified for the state in this case, categorized defendant’s behavior during the divorce as “extreme anger, frequent, loud outbursts.” There would be “verbal outbursts” punctuated by physical exertion which Judge Abel described as “jumping around vigorously, if not violently.” One of the jailhouse witnesses, who confirmed defendant’s expressed desire to kill Golden, also described defendant’s rantings and obsessive behavior while defendant was jailed in 1986.
While an after-the-fact hearing to determine competency will not adequately protect a defendant’s due process rights where there are reasonable grounds dining trial to alert the trial court that the defendant may not be competent to proceed, Hill, here, the post-trial hearing, the record of the trial and the trial court’s findings support the conclusion that such grounds did not exist in this case to have alerted the trial court to conduct a competency hearing on its own motion. See Koon; Christopher v. State, 416 So.2d 450, 452-53 (Fla.1982).
To belatedly claim incompetence is no more than another attempt to win yet a third trial. Legally, defendant is not entitled to one. Philosophically, I cannot help but observe that to grant a new trial would not serve justice or vindicate defendant’s constitutional rights. It would serve only to make a mockery of the valuable constitutional rights each defendant is afforded: the right of self-representation if competent and the right not to have a criminal prosecution proceed while a defendant is mentally incompetent.
I have reviewed the multiple other points raised by defendant and find them lacking in merit. I therefore concur in an affirmance of defendant’s conviction and sentence.

. In the first trial defendant requested that he be permitted to represent himself. The trial court initially determined in accordance with Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), that defendant had voluntarily and intelligently elected to waive his right to counsel and was competent to do so. However, it subsequently denied the request for self-representation based on defendant's health without holding another evidentiary hearing to determine whether the health reasons constituted unusual circumstances to justify its denial. Our court determined that defendant's right of self-representation had been infringed upon by the procedure followed by the trial court when it did not hold a second evidentiary hearing. Kleinfeld v. State, 568 So.2d 937, 939 (Fla. 4th DCA 1990), review denied, 581 So.2d 167 (Fla.1991).

. Defendant made a motion to determine competency to proceed with sentencing, which was withdrawn the day of the hearing based on the reports of psychologists who examined defendant in April 1993, less than two months post-trial, finding defendant was competent to proceed with sentencing and assist his attorney. One report specifically noted that defendant was not psychotic or "mentally ill.”