974 So.2d 505 (2008)
Wendall MAXWELL, Appellant,
v.
STATE of Florida, Appellee.
No. 5D07-2085.
District Court of Appeal of Florida, Fifth District.
February 1, 2008.
*506 James S. Purdy, Public Defender, and James R. Wulchak, Assistant Public Defender, Daytona Beach, for Appellant.
Bill McCollum, Attorney General, Tallahassee; and Mary G. Jolley, Assistant Attorney *507 General, Daytona Beach, for Appellee.
ORFINGER, J.
Wendall Maxwell appeals his convictions of leaving the scene of an accident with death and felony driving while license suspended or revoked. He contends that because reasonable grounds existed to suggest that he was incompetent to proceed at sentencing, the trial court was required to determine his competency pursuant to Florida Rule of Criminal Procedure 3.210.215. We agree and remand for further proceedings.
In 2003, in the course of an unrelated criminal proceeding, Maxwell was found to be incompetent due to schizophrenia and committed to a state mental hospital. Following treatment and the administration of antipsychotic drugs, his competency was restored. In December 2005, Maxwell was charged with leaving the scene of an accident with death, in violation of section 316.027(1)(b), Florida Statutes (2006), and felony driving while license suspended or revoked, in violation of section 322.34(2)(c), Florida Statutes (2006). He was examined by psychiatrist Stephen Young, M.D., and psychologist Elek Ludvigh, Ph.D., who both opined that Maxwell was competent to stand trial, despite some unexplained, serious physical problems. Maxwell then entered an open no contest plea to the charges, and the State filed a notice of intent to seek habitual offender punishment. The court continued the matter in order to obtain a pre-sentence investigation (PSI) report as required by section 775.084(3)(a)1, Florida Statutes (2006).
Between the time he entered his plea and the scheduled sentencing date, Maxwell's physical and mental condition deteriorated rapidly. He was transferred from the jail to a hospital in a near-comatose state, where an MRI and other tests revealed that he had a rare and severe form of progressive multiple sclerosis. This condition had caused lesions on his brain, affecting his mental condition. Aggressive medical treatments were attempted to reverse the effects of the disease, but proved futile; one treatment apparently caused his condition to worsen. With this knowledge at hand, the court ordered Dr. Young to perform another mental evaluation on Maxwell prior to sentencing.
At the next hearing, Dr. Young confirmed that Maxwell's multiple sclerosis had caused lesions on his brain, resulting in a significant, adverse effect on his mental competency. He concluded that Maxwell lacked the mental competency, to appreciate his circumstances and to assist his counsel for sentencing. As a result, he believed that Maxwell was not competent to, be sentenced. Dr. Young testified, that the disease had permanently affected Maxwell's mental competency, it was unlikely to be restored by any treatment, and that Maxwell was terminally ill. Dr. Young recommended that Maxwell, who now required 24-hour a day care, be placed in a Medicaid-funded nursing home. A representative of the Department of Children and Families (DCF) advised the Court that DCF did not have the facilities to hospitalize or treat Maxwell's neurological condition, which was the cause of the mental incompetence. Further, Maxwell did not qualify for commitment to a state mental facility since he suffered from a physical disease and not a mental illness, and he was not a danger to himself or others in his condition. After hearing the victim's mother express her displeasure over Maxwell's possible release to a nursing home, the trial court recessed the hearing in anticipation of Dr. Young's written report and set another hearing on Maxwell's mental status.
*508 Shortly thereafter, Dr. Young filed his written report. At the subsequent hearing, there was again testimony that Maxwell's disease was terminal and that his mental incompetence was most likely permanent. It was again suggested that as Maxwell was permanently unable to feed, bathe, or perform other routine activities of daily life, he should be placed in a skilled nursing home. The victim's family again expressed their displeasure with Maxwell's release to a nursing home. Despite the evidence, the trial court concluded that although Maxwell had "reached a status of incompetence," it would not follow Dr. Young's recommendation of conditional release to a nursing facility, concluding that Maxwell would remain in the jail indefinitely until his competence was restored:
THE COURT: I'm glad we had this hearing today. I think we spent an awful lot of time on behalf of Mr. Maxwell's case trying to figure out what to do. And while I'm sitting thinking about it  and I certainly have the most  please, please let me stress that I'm not without sympathy to [Maxwell's mother] and her family.
I'm a parent. But it dawned on me while we're sitting here, if I granted the request that the Defense is seeking, he would never be incarcerated; he'd go to a nursing home and that's  I guess we're say it out loud  he'd go to a nursing home to go die. Isn't that right?
. . . .
THE COURT: Dr. Young's shaking his head yes.
The chance of him getting back to normal are slim to none.
All right, so nothing further. We're done.
. . . .
THE COURT:. . . . And I'm not going to make a decision based on the financial convenience of the jail. I've decided that I've been on the wrong track here. He's not leaving this jail until he's competent. He's staying right here. That's the one thing we can do, is we can incarcerate him for a crime that he committed, he knows he committed. He was competent when he entered his plea. He won't have any TV in the infirmary. That's not my problem. And he will be stuck, just like he would be in a prison, not being able to visit his family. I'm not going to let him have the luxury of being in a nursing home like anybody and everybody else when he's  he's looking at 40 years in prison.
So  I apologize to everybody for dragging this thing on. I think I tried to do the right thing. And then it dawned on me while I'm sitting here, I sympathize with the people out here at the jail, but I'm not so sure the financial inconvenience of the jail should be entered into my decision when I  when I decide what happens.
So we're done. He stays here until  we're not going to have any more hearings. If you-all can come up with a plan to get him competent, I'll be glad to reentertain any motions, or if you-all can come up with a stipulation where he's competent to proceed and you want to put him in a state penitentiary, that's fine. Nursing home is not an option.
Two months later, although Maxwell's condition had not improved, the trial court scheduled Maxwell's sentencing. Maxwell then filed a petition for a writ of habeas corpus, mandamus, and/or prohibition with this Court, contending that he was being illegally committed in the county jail. In its response to Maxwell's petition, the State admitted that Maxwell's "competency to proceed with sentencing has not been *509 established and, in fact, his competency is in question." "This," the State conceded, "precludes him presently from being sentenced." Notwithstanding, the State contended that the writ was premature since Maxwell had only been examined by one expert, whereas, the rule requires examination by at least two experts before a finding of competency. Treating the petition as one seeking prohibition, this Court dismissed the petition, rejecting Maxwell's request for conditional release. Maxwell v. State, No. 5D07-1482 (Fla. 5th. DCA May 18, 2007).
Maxwell's counsel moved to continue the sentencing and requested that a second expert be appointed to evaluate Maxwell's competency to proceed to sentencing. The court denied the motion without explanation, but later ruled that Maxwell was competent to proceed to sentencing. Maxwell was then sentenced as an habitual offender to fifteen years imprisonment on the charge of leaving the scene of an accident with death and a concurrent five-year sentence on the charge of felony driving while license suspended or revoked. This appeal followed.
On appeal, Maxwell contends that " the trial court had reasonable grounds to believe that he was incompetent to proceed with sentencing, and should have ordered at least two mental health evaluations and conducted a competency hearing prior to proceeding to sentencing. The State responds that the trial court did not abuse its discretion in determining that no competency examination was required. The State submits that Maxwell had the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and he had a rational, as well as a factual, understanding of the sentencing proceedings against him. Thus, the State concludes that Maxwell was lawfully sentenced.
When criminal proceedings are held against a mentally incompetent defendant, the defendant's constitutional right of due process is denied. Hill v. State, 473 So.2d 1253, 1259 (Fla.1985); Molina v. State, 946 So.2d 1103, 1106 (Fla. 5th DCA 2006) (recognizing that defendant has due process right to determination of competency to proceed to trial whenever it appears reasonably necessary). The test used to determine the defendant's competency is whether the defendant has a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." Id. at 1257 (emphasis omitted) (quoting Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)).
Florida Rule of Criminal Procedure 3.214 sets forth the procedure that the trial court must follow when the issue of a defendant's competency to proceed to sentencing is raised:
If a defendant is determined to be incompetent to proceed after being found guilty of an offense or violation of probation or community control or after voluntarily entering a plea to an offense or violation of probation or community control, but prior to sentencing, the court shall postpone the pronouncement of sentence and proceed pursuant to rule 3.210 (et seq.) and the following rules.
Florida Rule of Criminal Procedure 3.210(b) provides:
(b) Motion for Examination. If, at any material stage of a criminal proceeding, the court of its own motion, or on motion of counsel for the defendant or for the state, has reasonable ground to believe that the defendant is not mentally competent to proceed, the court shall immediately enter its order setting a time for *510 a hearing to determine the defendant's mental condition, which shall be held no later than 20 days after the date of the filing of the motion, and shall order the defendant to be examined by no more than 3, nor fewer than 2, experts prior to the date of the hearing. Attorneys for the state and the defendant may be present at the examination.
Once the issue of a defendant's competency is raised, the question the trial court must consider is "`whether there is a reasonable ground to believe the defendant may be incompetent, not whether he is incompetent.'" Tingle v. State, 536 So.2d 202, 203 (Fla.1988) (quoting Scott v. State, 420 So.2d 595, 597 (Fla.1982)). "If the trial court is presented with reasonable grounds to believe that the defendant may not have the sufficient present ability to consult with his attorney and aid in the preparation and presentation of his defense, the trial court must order a hearing and examination." Brockman v. State, 852 So.2d 330, 333 (Fla. 2d DCA 2003); see Carrion v. State, 859 So.2d 563, 565 (Fla. 5th DCA 2003) ("If the trial judge has reasonable grounds to believe that a criminal defendant is not competent to proceed, then the court must conduct a competency hearing."); see also Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Dusky, 362 U.S. 402, 80 S.Ct. 788.
Even when a defendant has previously been found to be competent, the trial court must remain receptive to revisiting the issue if circumstances change. Hunter v. State, 660 So.2d 244, 248 (Fla. 1995). "[A] prior determination of competency does not control when new evidence suggests the defendant is at the current time incompetent." Nowitzke v. State, 572 So.2d 1346, 1349 (Fla.1990). This is a continuing obligation, which may require the trial court to revisit the issue after a defendant has been declared competent to proceed. Molina, 946 So.2d at 1106 (citing Nowitzke, 572 So.2d 1346; Culbreath v. State, 903 So.2d 338 (Fla. 2d DCA 2005)).
In this case, after Maxwell entered his plea, everyone, including the trial judge, had concerns about Maxwell's mental health. As a result, the court ordered another mental evaluation prior to sentencing. After the results of that evaluation revealed that Maxwell's multiple sclerosis had formed lesions on his brain, seriously affecting his competency to proceed to sentencing, the court acknowledged that Maxwell had "reached a status of incompetence." Clearly, the trial court was presented with reasonable grounds to question Maxwell's mental competence to be sentenced.
Having come to this conclusion, the court was required by rule 3.210(b) to have Maxwell evaluated by at least one more expert and hold a competency hearing. The trial court's failure to do so was error. See Cochran v. State, 925 So.2d 370 (Fla. 5th DCA 2006) (reiterating that once trial court enters order appointing experts on reasonable belief defendant may be incompetent to stand trial, competency hearing' must be held); Carrion, 859 So.2d 563 (holding that once trial court determined reasonable grounds existed to question defendant's mental competency to stand trial for life felony, trial court required to conduct competency hearing, regardless of subsequent determination that defendant's return to school indicated ability to function in community); Warren v. State, 543 So.2d 315, 315 (Fla. 5th DCA 1989) (holding that trial judge could not deny pretrial motion seeking competency hearing based on his own personal observation; such investigation insufficient to insure defendant not deprived of due process right of not being tried while mentally incompetent). *511 Because a hearing to determine whether a criminal defendant was competent at the time of trial cannot be held retroactively, see, e.g., Tingle, 536 So.2d at 204; Scott v. State, 420 So.2d 595, 598 (Fla.1982), we must reverse Maxwell's sentences and remand for a new sentencing hearing, contingent upon a determination that Maxwell is competent to proceed.
REVERSED AND REMANDED. GRIFFIN and EVANDER, JJ., concur.