845 So.2d 282 (2003)
Nathaniel BRAZILL, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-3244.
District Court of Appeal of Florida, Fourth District.
May 14, 2003.
*285 Carey Haughwout, Public Defender, and David John McPherrin, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
On the last day of the 1999-2000 school year, thirteen-year-old Nathaniel Brazill shot and killed a teacher at his middle school, Barry Grunow.
The state charged Brazill with first degree murder and aggravated assault with a firearm. The jury convicted him of second degree murder and aggravated assault with a firearm. The trial judge sentenced him to concurrent sentences: a mandatory minimum sentence of twenty-eight years in prison on the murder charge and five years in prison, with a three year mandatory minimum, on the assault charge.
We affirm in all respects.

The evidence at trial
In the early afternoon of May 26, 2000, Brazill and Michelle Cordovaz were suspended for the remainder of the day as the result of a water balloon fight. School counselor Kevin Hinds escorted the two students off campus. Brazill asked Hinds what time he was going home. Hinds indicated that he was leaving around 4:15 to 4:30 p.m. and asked why Brazill wanted to know. Brazill shrugged and did not respond.
As he was walking away with Cordovaz, Brazill told her that he had a gun and was going to return to shoot Hinds. Cordovaz asked: "You wouldn't do that, Nate, would you?" Brazill answered: "Watch. I'm going to be all over the news."
On the way home, Brazill made several stops. Near his grandmother's house, Brazill spoke to Brandon Spann. He asked if Spann was part of a gang or had a gun. Spann asked him why he needed a gun. Brazill replied that he was "going to fuck up the school" because of the suspension.
At his home, Brazill retrieved a gun from his bedroom. The previous weekend, Brazill was at his grandfather's house and found the gun in a cookie jar in his grandfather's bureau. At that time, he loaded the gun, pulled the slide back, engaged the safety, and placed it in his overnight bag. When Brazill left his grandfather's house, he took the gun home with him; upon returning home he hid the gun in his room.
Taking the gun from his bedroom, Brazill rode his bike back to school. On the way, he stopped by his aunt's house and left a note.
Brazill entered the school grounds near the rear parking lot, a designated teachers' area. School security officer Matt Baxter saw him. Baxter followed him, but found only an abandoned bike. After leaving his bike, Brazill ran to the school building. On the way, he advised a student sitting outside to go home.
Once inside the school, Brazill went directly to Barry Grunow's classroom to speak with two friends, Dinora Rosales and Vonae Ware. He had once dated Ware for a time, and was romantically interested in Rosales. Earlier in the day, Brazill gave Rosales two cards and a bouquet of flowers.
When Brazill knocked on Grunow's door, the students in the class were already standing, because they were about to go outside. Brazill sternly asked to speak to Rosales and Ware, who were standing on either side of Grunow. The teacher did not allow the girls to leave the classroom, but said that Brazill could come inside. *286 Brazill refused to enter the classroom. Three more times he asked to see the girls. Each time Grunow calmly declined and told him to go back to class.
Brazill then pulled out the gun and aimed it at Grunow's head. He was in the hallway, approximately an arm's length from Grunow. He backed up slightly and assumed a shooter's stance with his legs apart.
Grunow told Brazill to stop pointing the gun, but he continued to point the gun at the teacher's head. Brazill appeared to be angry but calm; he was not crying or shaking. Brazill pulled the slide back on the gun.[1]
As Grunow attempted to close the classroom door, Brazill pulled the trigger and Grunow fell to the floor, with a gunshot wound between the eyes. A school surveillance videotape of the hallway revealed that Brazill had pointed the gun at Grunow for nine seconds before shooting. Brazill exclaimed: "Oh shit," and fled.
On the way out, Brazill used both hands to aim the gun at math teacher, John James, who was conducting class next door to Grunow. As Brazill aimed the gun, he told James not to bother him, that he was going to shoot. James immediately turned around and led his students back into his classroom.
Brazill ran out of the building. To one teacher, Brazill did not appear to be visibly upset. He was not sweating. He was not crying. Near the school, Officer Michael Mahoney observed Brazill walk into the street, put his hands on his head, and kneel. When the officer asked what he was doing, Brazill stated that he had shot someone at school and the gun was in his pocket. Brazill was then arrested. He acknowledged that he had shot Grunow. Brazill was taken to the police station, where he gave a videotaped statement.
A firearms expert with the FBI testified that the gun used in the shooting had a safety that functioned normally. The gun had a trigger pull that required five and one-half pounds of pressure to fire. It would not discharge unless the trigger was pulled.

Section 985.225, Florida Statutes (1999) is not unconstitutional
Brazill argues that section 985.225, Florida Statutes (1999), is unconstitutional as a violation of due process, equal protection, and separation of powers. In pertinent part, section 985.225 provides:
(1) A child of any age who is charged with a violation of state law punishable by death or by life imprisonment is subject to the jurisdiction of the court as set forth in s. 985.219(7)[2] unless and until an indictment on the charge is returned by the grand jury. When such indictment is returned, the petition for delinquency, if any, must be dismissed and the child must be tried and handled in every respect as an adult:
(a) On the offense punishable by death or by life imprisonment; and

*287 (b) On all other felonies or misdemeanors charged in the indictment which are based on the same act or transaction as the offense punishable by death or by life imprisonment or on one or more acts or transactions connected with the offense punishable by death or by life imprisonment.
. . .
(3) If the child is found to have committed the offense punishable by death or by life imprisonment, the child shall be sentenced as an adult. If the juvenile is not found to have committed the indictable offense but is found to have committed a lesser included offense or any other offense for which he or she was indicted as a part of the criminal episode, the court may sentence pursuant to s. 985.233.
. . .
§ 985.225 (emphasis added).
The constitutionality of a statute is reviewed de novo. See City of Miami v. McGrath, 824 So.2d 143, 146 (Fla.2002); Lowe v. Broward County, 766 So.2d 1199, 1203 (Fla. 4th DCA 2000); Dickerson v. State, 783 So.2d 1144, 1146 (Fla. 5th DCA 2001). There is a strong presumption that a statute is constitutionally valid. See McGrath, 824 So.2d at 146; In re Estate of Caldwell, 247 So.2d 1, 3 (Fla.1971); Dickerson, 783 So.2d at 1146. "It is well established that where reasonably possible and consistent with constitutional rights, a statute will be interpreted by the courts in a manner that resolves all doubt in favor of its validity." DuFresne v. State, 826 So.2d 272, 274 (Fla.2002); see also State v. Mitro, 700 So.2d 643, 645 (Fla.1997); McKibben v. Mallory, 293 So.2d 48, 51 (Fla.1974).
Brazill first contends that his due process rights were violated because he was denied the "rehabilitative aspect of juvenile court" solely because the state decided to procure an indictment.
However, there is no absolute right conferred by common law, constitution, or otherwise, requiring children to be treated in a special system for juvenile offenders. See In re Gault, 387 U.S. 1, 16, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); State v. Cain, 381 So.2d 1361, 1363 (Fla.1980); Johnson v. State, 314 So.2d 573, 576 (Fla.1975) (noting that it was within legislative authority pursuant to Article I, Section 15(b) of the Florida Constitution, to create an exception where children would be treated as adults).
Under Article I, Section 15(b), a "child," as defined by "law," may be charged "with a violation of law as an act of delinquency instead of [a] crime." Art. I, § 15(b), Fla. Const. As the supreme court has explained, this provision means that "a child has the right to be treated as a juvenile delinquent only to the extent provided by our legislature." Cain, 381 So.2d at 1363. The legislature has the power to determine who, if anyone, is entitled to treatment as a juvenile. Id.; see also Woodard v. Wainwright, 556 F.2d 781, 785 (5th Cir.1977) (finding that "treatment as a juvenile is not an inherent right but one granted by the state legislature, therefore the legislature may restrict or qualify that right as it sees fit, as long as no arbitrary or discriminatory classification is involved").
Because section 985.225 implicates no fundamental constitutional right, the applicable test for reviewing a substantive due process challenge to the statute is the rational-basis standard of review. See Shapiro v. State, 696 So.2d 1321, 1326-27 (Fla. 4th DCA 1997). Under this standard, a presumption of constitutionality attaches to a statute; the burden is on the party challenging the statute to establish *288 that the statutory proscription lacks a rational relationship to a legitimate governmental interest. See Chicago Title Ins. Co. v. Butler, 770 So.2d 1210, 1214-15 (Fla. 2000) (challenging party must prove that the statute in question is discriminatory, arbitrary, or oppressive for there to be a violation of due process under the rational-basis standard); Fla. Dep't of Agric. & Consumer Servs. v. Haire, 836 So.2d 1040, 1050 (Fla. 4th DCA 2003); State v. Sobieck, 701 So.2d 96, 103 (Fla. 5th DCA 1997).
Section 985.225 is related to the state's interest in crime deterrence and public safety. The statute provides treatment as an adult for those offenses serious enough to be punishable by life imprisonment or death. Such crimes are the most violent or dangerous offenses against persons. It is not unreasonable for the legislature to treat children who commit serious crimes as adults in order to protect societal goals. Accord State v. Perique, 439 So.2d 1060, 1064 (La.1983). The legislature could reasonably have determined that for some crimes the rehabilitative aspect of juvenile court must give way to punishment. As the fifth circuit wrote when considering the predecessor statute[3] to section 985.225:
Doubtless the Florida legislature considered carefully the rise in the number of crimes committed by juveniles as well as the growing recidivist rate among this group. The legislature was entitled to conclude that the parens patriae function of the juvenile system would not work for certain juveniles, or that society demanded greater protection from these offenders than that provided by that system.
Woodard, 556 F.2d at 785 (footnotes omitted).
Raising a procedural due process argument, Brazill cites Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) to support his argument that a hearing is required before adult sanctions may be imposed upon a child. He attacks section 985.225 because it allows the state to bypass a hearing on the suitability of adult sanctions by securing an indictment.
However, Kent involved a hearing to determine the treatment of a child in compliance with the statute there under review. See 383 U.S. at 552-54, 86 S.Ct. 1045. Section 985.225 does not require a court to hold a hearing to decide whether adult sanctions are appropriate. In Cain, the supreme court discussed Kent and found that: "Whatever its constitutional ramifications, we do not believe they extend to the statutory provision under consideration here where discretion to prosecute a juvenile as an adult is vested in the prosecutor rather than in a judge." Cain, 381 So.2d at 1365 (footnote omitted). Brazill was afforded the same procedural rights as anyone else charged with first degree murder by indictment. Due process does not require anything more because of his status as a child.[4]
*289 Brazill next argues that section 985.225 violates equal protection and the separation of powers. His attack focuses on the prosecutor's discretion in seeking an indictment under section 985.225(1); where the prosecutor does not obtain one, then a prosecution may proceed in juvenile court. Brazill complains that because the statute contains no criteria "to steer prosecutorial discretion," arbitrariness is injected into the decision-making process. Brazill also argues that the statute disparately treats children thirteen years of age or younger, because the only method of prosecuting them in adult court is through an indictment. He asserts that section 985.225(3) requires adult treatment of a child convicted of certain felonies, while a child charged by information might still be eligible for juvenile sanctions.
These attacks must fail because of the broad discretion accorded a prosecutor under our legal system. See State v. Vixamar, 687 So.2d 300, 303 (Fla. 4th DCA 1997). As the supreme court has written, "the discretion of a prosecutor in deciding whether and how to prosecute is absolute in our system of criminal justice." Cain, 381 So.2d at 1367; see also Manduley v. Superior Court, 27 Cal.4th 537, 117 Cal. Rptr.2d 168, 41 P.3d 3, 19 (2002). In Cain, the supreme court rejected a similar constitutional attack to the one Brazill makes here.
Section 985.225(1) applies to "[a] child of any age who is charged with a violation of state law punishable by death or by life imprisonment...." (Emphasis added). It does not differentiate between age groups. The statute equally applies to any child who commits an offense punishable by death or by life imprisonment. Additionally, a child transferred to the criminal court becomes similarly situated with defendants in that court, rather than those still in the juvenile system. See, e.g., State v. Mitchell, 577 N.W.2d 481, 492-93 (Minn.1998).
Children thirteen and under may be prosecuted in adult court only by indictment; the involuntary waiver provisions of section 985.226(2), Florida Statutes (1999) do not apply. This limitation on children thirteen and under is not properly viewed as a suspect classification scheme; rather, as the state points out, the statutory "requirement of an indictment is for the protection of the accused juvenile," because the grand jurors must concur in the prosecutor's charging decision. When the grand jury does not return an indictment, a juvenile thirteen and under is not subject to section 985.226(2).

The prosecutor's closing argument did not rise to the level of fundamental error
Brazill argues that the prosecutor's closing argument deprived him of a fair trial. He identifies over twenty comments in the argument as improper. Brazill concedes that he objected to only one comment, which was sustained. However he argues that the other arguments were so bad that they elevated the one preserved error into reversible error. He makes the related argument that, taken as a whole, the prosecutor's argument amounted to fundamental error.
The general rule is "that failing to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review." Brooks v. State, 762 So.2d 879, 898 (Fla. 2000). As the supreme court has often observed
[t]he sole exception to this general rule is where the unobjected-to comments rise to the level of fundamental error. In order for an error to be fundamental and justify reversal in the absence of a timely objection, "the error must reach *290 down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error."
Spencer v. State, 842 So.2d 52, 74 (Fla. 2003) (quoting Brown v. State, 124 So.2d 481, 484 (Fla.1960)) (citations omitted); see also Conahan v. State, 844 So.2d 629, 640 (Fla.2003); Brooks, 762 So.2d at 898-99 (quoting McDonald v. State, 743 So.2d 501, 505 (Fla.1999)); Urbin v. State, 714 So.2d 411, 418 n. 8 (Fla.1998); Bonifay v. State, 680 So.2d 413, 418 n. 9 (Fla.1996).
Brazill correctly points out that we should view the objected-to comment "in conjunction with the unobjected-to comments." Brooks, 762 So.2d at 899. This court has held that multiple improprieties in a prosecutor's closing argument may reach "the critical mass of fundamental error" which destroys "the defendant's most important right under our system, the right to the `essential fairness of [his] criminal trial.'" Cochran v. State, 711 So.2d 1159, 1163 (Fla. 4th DCA 1998) (quoting Knight v. State, 672 So.2d 590, 591 (Fla. 4th DCA 1996) (quoting Peterson v. State, 376 So.2d 1230, 1234 (Fla. 4th DCA 1979))); see McKenzie v. State, 830 So.2d 234, 238 (Fla. 4th DCA 2002).
The adversary system requires objections at the trial level to preserve issues for appellate review. See Murphy v. Int'l Robotic Sys., Inc., 766 So.2d 1010, 1016-17 (Fla.2000). The requirement of an objection at trial avoids "the creation of `gotchas' whereby the defense is allowed to sit on its rights, saying nothing until after it sees whether the jury returns an adverse verdict." Jones v. State, 571 So.2d 1374, 1376 n. 3 (Fla. 1st DCA 1990).
As a departure from the requirements of the adversary system, the "critical mass" approach to fundamental error in closing argument recognizes a prosecutor's duty "to preserve intact all the great sanctions and traditions of the law." Washington v. State, 86 Fla. 533, 98 So. 605, 609 (1923). A grave breach of that duty "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Murphy, 766 So.2d at 1030 (quoting Goldfuss v. Davidson, 79 Ohio St.3d 116, 679 N.E.2d 1099, 1104 (1997)).
We have carefully reviewed the prosecutor's closing argument in light of the record in this case and hold that the argument did not reach the critical mass of fundamental error. The argument was not replete with those types of errors that have amounted to fundamental error in earlier cases. There was no appeal to "racial, ethnic, or religious prejudices." Id. There were no personal attacks on defense counsel or the defendant. Cf. Barnes v. State, 743 So.2d 1105, 1106-07 (Fla. 4th DCA 1999); Cochran, 711 So.2d at 1162-63; Knight, 672 So.2d at 591. The prosecutor did not express his "personal belief as to the witness's credibility and the defendant's guilt." Cochran, 711 So.2d at 1163. The prosecutor did not argue facts outside the evidence. Cf. McKenzie, 830 So.2d at 238; Cochran, 711 So.2d at 1163; Knight, 672 So.2d at 591. The prosecutor made no comment on the defendant's right to remain silent. Cf. Knight, 672 So.2d at 591. The prosecutor did not improperly shift the burden of proof to the defendant. Cf. Jackson v. State, 832 So.2d 773, 777 (Fla. 4th DCA 2002).
The most serious prosecutorial lapse in this case were comments designed to evoke sympathy for the victim. However, without more, such comments cannot amount to fundamental error. Unlike errors which cannot be cured by an instruction from the court, appeals to sympathy are easily correctable by a timely objection. A standard jury instruction warned the jurors about not basing their decision *291 on sympathy. The remaining arguments under scrutiny were either not error or errors so minor that they could not have impacted the verdict. For example, the prosecutor argued that he had "spent hours with" the murder weapon and he was unable to "wipe the safety off." The gun was in evidence; the jurors had the chance to manipulate it themselves, and there had been much expert testimony directed to this issue. What the prosecutor said was not pivotal.
In this case, it cannot be said that "a verdict of guilty could not have been obtained without the assistance of the [prosecutor's closing argument]." Brooks, 762 So.2d at 899. In fact, there would likely have been a guilty verdict had the prosecutor made no closing argument at all. The case turned on its facts, not on the oratorical performance of the attorneys. There was abundant evidence to support a conviction of first degree murder. Defense counsel's strategy during closing was apparently to maintain a low profile and skillfully create sympathy for both the victim and his young client. The strategy met with success. The jury rejected the first degree murder charge for the lesser included offense.

The sentence imposed was lawful
We briefly address several points pertaining to sentencing. The twenty-eight year mandatory minimum sentence was lawful. The jury's verdict was sufficient to support the mandatory minimum sentence. An enhanced sentence is proper when it is based on a jury verdict that specifically refers to the use of a firearm, either as a separate finding or by including a reference to a firearm when identifying the specific crime. See Tucker v. State, 726 So.2d 768, 772 (Fla.1999); State v. Hargrove, 694 So.2d 729, 730-31 (Fla.1997); State v. Tripp, 642 So.2d 728, 730 (Fla.1994).
Section 775.087(2)(a)3. provides that if during the course of the commission of the felony such person discharged a "firearm" ... and, as a result of the discharge, death or great bodily harm was inflicted upon any person, the convicted person shall be sentenced to a minimum term of imprisonment of not less than 25 years and not more than a term of imprisonment of life in prison.
§ 775.087(2)(a)3., Fla. Stat. (1999) (emphasis added). The indictment in this case charged the crime of first degree murder and alleged that Brazill "did use and have in his possession a handgun, a firearm as defined in Florida Statute 790.001(6)."
The verdict form stated that Brazill was:
Guilty of Second Degree Murder with a Firearm, a lesser included offense, as contained in the Indictment.
We find the Defendant possessed, carried and fired a firearm in committing Second Degree Murder.
X Yes ____ No
This finding by the jury supported the trial court's sentence. See Amos v. State, 833 So.2d 841 (Fla. 4th DCA 2002). The "discharge of a firearm" was "inherent in the jury's verdict" that Brazill carried and fired a firearm in committing second degree murder. Id. at 842.
Brazill next challenges the imposition of a minimum mandatory sentence of twenty-eight years for his conviction of second degree murder. He contends that the express language of section 775.087(2) does not permit the trial court to designate the entire sentence as a mandatory minimum, but only the first twenty-five years.
Second degree murder is a felony in the first degree that carries a potential maximum sentence of life imprisonment. See §§ 782.04(2), 775.082(3)(b), Fla. Stat. (1999). Brazill's conviction under the enhancement statute, section 775.087(2)(a)3., *292 subjected him to the sentencing provisions of that section, which provide that the "convicted person shall be sentenced to a minimum term of imprisonment of not less than 25 years and not more than a term of imprisonment of life in prison." § 775.087(2)(a)3.
A plain reading of section 775.087(2)(a)3. indicates that the minimum term that may be imposed ranges from twenty-five years to life imprisonment. The precise length of the mandatory minimum is a discretionary sentencing decision of the trial court. Brazill's twenty-eight year sentence falls within the permitted range. Grammatically, the language following "not less" and "not more" pertains to the "minimum term of imprisonment." To read the sentence as Brazill argues would turn the statute into nonsense. Someone cannot be sentenced to a term of incarceration greater than life; death ends incarceration. Thus, the phrase "not more than a term of imprisonment of life in prison" refers to the greatest mandatory minimum sentence, not to the maximum sentence that might be imposed.
AFFIRMED.
KLEIN and TAYLOR, JJ., concur.
NOTES
[1] A crime scene investigator testified that pulling the slide back on this gun put a bullet in the chamber. If a bullet was already in the chamber when the slide was pulled, then a live round would eject. At the crime scene, the investigator found a live cartridge, along with a discharged shell casing.
[2] The jurisdiction of the court shall attach to the child and the case when the summons is served upon the child and a parent or legal or actual custodian or guardian of the child, or when the child is taken into custody with or without service of summons and before or after the filing of a petition, whichever first occurs, and thereafter the court may control the child and the case in accordance with this part.

§ 985.219(7), Fla. Stat. (1999).
[3] Section 39.02(5)(c), Florida Statutes (1975).
[4] Other jurisdictions have ruled similarly on this issue. See, e.g., Andrews v. Willrich, 200 Ariz. 533, 29 P.3d 880, 886 (Ariz.Ct.App.2001) (finding that no liberty interest is deprived of when a prosecutor has the discretion to charge a juvenile as an adult); State v. Angel C., 245 Conn. 93, 715 A.2d 652, 661 (1998) (finding that if a statute vests a juvenile with juvenile status, then that right cannot be taken away without notice and a hearing, but if the statute does not create a liberty interest, the same treatment is not warranted); People v. Conat, 238 Mich.App. 134, 605 N.W.2d 49, 61 (1999) (reasoning that a change in statute eliminating the need for a hearing to determine whether to sentence juveniles as adults did not violate due process because the legislature never indicated that a hearing was required).