864 So.2d 44 (2003)
Lionel TATE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-1306.
District Court of Appeal of Florida, Fourth District.
December 10, 2003.
*46 Richard L. Rosenbaum and Cheryl Zickler of Law Offices of Richard L. Rosenbaum, Fort Lauderdale, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Debra Rescigno, Assistant Attorney General, West Palm Beach, for appellee.
Steven Drizin of Bluhm Legal Clinic, Chicago, Michael J. Dale, Fort Lauderdale, and Robert G. Schwartz, Marsha L. Levick, and Lourdes M. Rosado of Juvenile Law Center, Philadelphia, for amicus curiae.
Barbara Bennett Woodhouse, Christopher Slobogin, Claudia Wright, and Sherrie Russell-Brown of Center on Children & the Law, Gainesville, and Steven Drizin of Bluhm Legal Clinic, Chicago, for amicus curiae.
STONE, J.
Lionel Tate appeals his conviction of first-degree murder and the resulting mandatory sentence to life in prison. Of the more than ten significant issues raised on appeal, one mandates reversal.
The denial of defense counsel's post-trial request to have Tate evaluated, based on sworn testimony from a neuropsychologist and two attorneys raising bona fide doubts as to Tate's competency, and the trial court's failure to order, sua sponte, a pretrial *47 competency evaluation, constitute a violation of Tate's due process rights.
Tate, age twelve at the time of the crime, was indicted by a grand jury and convicted of the first-degree murder of six-year-old Tiffany Eunick in 1999. The general verdict included charges of both felony murder, based on committing aggravated child abuse, and premeditated murder. The trial and sentence, in light of Tate's age, has been the focus of considerable public interest reflected in the multiple amicus briefs filed in this appeal.
The evidence was clear that the victim was brutally slain, suffering as many as thirty-five injuries, including a fractured skull, brain contusions, twenty plus bruises, a rib fracture, injuries to her kidneys and pancreas, and a portion of her liver was detached. It was undisputed that it would take tremendous force to inflict these injuries. None of the experts, not even those for the defense, believed that the injuries were consistent with "play fighting," or that they were accidentally inflicted.
Post-trial, in addition to a motion for new trial, the defense requested an evidentiary hearing, pursuant to Cottle v. State, 733 So.2d 963 (Fla.1999), challenging whether pre-trial plea negotiations and an alleged proposal to jointly lobby the governor for clemency in the event of a conviction, were adequately explained to Tate. Tate's appellate counsel, who was representing him on the motion for new trial, for the first time, also sought a competency evaluation and hearing, asserting that Tate did not know or understand the consequences of proceeding to trial and that he was unable to assist counsel before and during trial. Such a post-trial evaluation and hearing would be the only remaining opportunity to establish Tate's mental condition at that point in time.
On the second day of the post-trial hearing held on March 2, 2001, Tate's counsel proffered to the court that Tate was not presently competent to understand the implications of the need to waive his attorney-client privilege. At that time, the trial judge asked Tate if he understood, and he replied, "no." During the post-trial hearing, Tate's counsel made an oral motion for competency evaluation and hearing for the limited purpose of determining whether to order the same.[1]
At the conclusion of the hearing, the trial court orally determined that, at a minimum, Tate should be evaluated by mental health experts pursuant to Florida Rule of Criminal Procedure 3.210, stating,
I'm also convinced that if I denied your hearing at this particular point, that I would get ordered by the Fourth District Court of Appeals [sic] to have such a hearing. And I'd rather do that while testimony is fresh, rather than trying to recall what happened three or four or five or six months down the road.
In response, however, the state argued that the motion should be denied because it was required to be in a written motion. Defense counsel inserted that he would submit a written motion. Nevertheless, the court reversed itself, and denied the requested relief. Tate subsequently filed a written motion for competency evaluation attaching affidavits indicating that Tate was not presently competent and that, pre-trial, he was not competent to assist counsel or to decide whether to take the state's plea offer.
*48 In rejecting a post-trial evaluation and hearing, the trial court explained that until that time, no one had "voiced a question about the defendant's competency to proceed." The court noted that two days before trial, Tate said he wanted to proceed to trial. Further, at no time, before or during trial, did Tate's lawyers advise the court that Tate could not proceed due to incompetency.
The question we resolve, here, is whether, due to his extremely young age and lack of previous exposure to the judicial system, a competency evaluation was constitutionally mandated to determine whether Tate had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he had a rational, as well as factual, understanding of the proceedings against him. We conclude that it was. See Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Hill v. State, 473 So.2d 1253 (Fla.1985); see also Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); Kelly v. State, 797 So.2d 1278 (Fla. 4th DCA 2001).
Tate's appellate lawyer advised the court, "[a]nd as [sic] officer of the court I'm standing next to Lionel drawing pictures, hasn't listened to one work [sic] and had no idea what's going on." Counsel added that Tate was not "assist[ing] us in assisting him, and there's no interaction that's going on," and continued,
It's someone [Tate] sitting here playing with pencil, pen and drawing pictures in what's probably the most important proceeding of his life, and it is something that every [sic] needs to stop and step back.
There werethere was [sic] great people involved in this case, very experienced doctors but never a competency evaluation done. And one of the things that was in [sic] original motion for new trial, I think we're glossing over here is did Lionel Tate know the consequences of going forward.
Counsel also pointed out that "his eyes are moving around," which counsel interpreted as indicating that he did not understand. The court, however, pointed out that Tate's lack of interest in the proceeding did not equate with incompetency.
Counsel further related their concerns as to Tate's pre-trial rejection of an apparently favorable plea offer, arguing that Tate's trial counsel never told him that if he lost at trial, there was only one possible sentence, life in prison without parole, and that since he did not understand this, he could not have knowingly and voluntarily rejected the state's plea offer.
At trial, neuropsychologist, Dr. Mittenberg, testified that Tate had a mental delay of about three to four years, "which means that Lionel has an age equivalent of nine or ten years old." It is undisputed that Tate's IQ is approximately 90. Dr. Joel Klass, a child psychiatrist, testified for the defense at trial that Tate had the social maturity of a six-year-old and delays in inferential thinking. Dr. Sheri Bourg-Carter, called by the state as a rebuttal witness, likewise acknowledged Tate's immaturity.
Tate's trial counsel wanted to testify further in support of the request for a post-trial competency hearing, but was concerned about his ability to do so without a waiver of the attorney-client privilege. Accordingly, the question then arose whether Tate would waive his privilege and allow his trial attorney to testify concerning competency. Apparently, Tate, after conferring with his mother, did not agree to the proposed waiver. On the record, it appears that he simply followed his mother's instruction not to waive his attorney-client privilege, despite his lawyers' *49 positions that waiving the privilege was in Tate's best interest. Significantly, defense counsel wanted to reveal what led him to believe that Tate was not competent during trial, but was apparently precluded from doing so.
At the March 2nd hearing, after Tate's first oral motion for competency hearing was made, the state's witness, Dr. Bourg-Carter, stated that, in her opinion, Tate was "legally" competent and that Tate's trial lawyer knew the results of a pre-trial evaluation she performed. Dr. Bourg-Carter, stated that there was a pre-trial agreement between Tate's lawyer and the defense's expert psychologist, Dr. Spencer, that she would conduct certain examinations on Tate so that he would not be tested multiple times. She then conferred with Dr. Spencer. She testified that under the circumstances of the case, Tate's competency would logically arise as an issue that a forensic psychologist would need to consider. Dr. Bourg-Carter further testified that during her evaluation of Tate, he understood that the possible consequences of a conviction was to spend a "[l]ong time in prison."[2]
The state also drew the court's attention to the plea colloquy that was conducted five days before trial at which Tate, accompanied by his lawyer and court appointed psychiatrist, acknowledged that the state offered a plea of three years in a juvenile detention facility, followed by ten years of probation. Tate's lawyer stated at that time that, after consulting with Tate and his mother, he wanted to reject the plea offer and proceed to trial.
At the plea hearing, Tate did advise the trial court that he understood what his counsel told the court, that he had enough time to talk with his mother, and that he wanted to proceed to trial. Further, Tate stated that no one forced or pressured him into going to trial, and he had no questions for the court. Accordingly, the trial court concluded, "I'm convinced that Mr. Tate has sufficient ability to make a decision in this very important matter."
We recognize that factually, particularly without the assistance of testimony from trial counsel, the present case differs from Robinson and Hill. In Robinson, witnesses testified that they believed Robinson to be insane, he had a long history of disturbed behavior, had been hospitalized on several occasions for psychiatric disturbances, had shot and killed his son, and tried to commit suicide several years before he murdered his wife. 383 U.S. at 378, 86 S.Ct. 836. There, the Supreme Court concluded that the evidence before the court mandated an inquiry into his competence to stand trial, even in the face of his apparent mental alertness at trial and his counsel's failure to raise the issue. Id. at 385, 86 S.Ct. 836.
The state correctly notes that here, in contrast to Robinson, Tate had been seen by Dr. Bourg-Carter, even though no competency hearing was held, and her opinion was that Tate was competent to stand trial.[3] Further, the state emphasized the *50 absence of facts in the pre-trial or trial record showing that Tate was not competent to stand trial. Tate also had psychological experts available to the defense throughout the process, along with his lawyer and mother.
In Hill, the defendant was mentally retarded. 473 So.2d at 1255. At a hearing on his motion for post-conviction relief, an investigator testified that Hill was difficult to communicate with and was of no help in preparing his defense. Moreover, at his trial, Hill exhibited unusual behavior. Id. Incident to the post-conviction proceedings, Hill was evaluated and mental health professionals testified he had a low I.Q. and was unable to recall details of events even ninety minutes in the past, and one opined that Hill could not cooperate with his attorney, assist in his defense, or have any rational or factual understanding of the proceedings. Id.
The Florida Supreme Court, in Hill, recognized that the trial judge has an independent duty under Robinson and Florida Rules of Criminal Procedure to determine the competency of the defendant to stand trial and, finding that the evidence raised sufficient doubt as to Hill's competency to stand trial, should have required a hearing. The supreme court vacated Hill's conviction and sentence and remanded the case, allowing a second prosecution after a new determination that Hill was competent to stand trial. Id.
We also recognize that competency hearings are not, per se, mandated simply because a child is tried as an adult. However, in light of Tate's age, the facts developed pre-trial and post-trial, and his lack of previous exposure to the judicial system, a competency hearing should have been held, particularly given the complexity of the legal proceedings and the fact that he was denied this protection afforded children fourteen and older under section 985.226(2), Florida Statutes, which provides for a waiver hearing to determine whether the child should be tried as an adult. Further, the brief plea colloquy, taken alone, was not adequate to evaluate competency given his age, immaturity, his nine or ten-year-old mental age, and the complexity of the proceedings.
Even if a child of Tate's age is deemed to have the capacity to understand less serious charges, or common place juvenile court proceedings, it cannot be determined, absent a hearing, whether Tate could meet competency standards incident to facing a first-degree murder charge involving profound decisions regarding strategy, whether to make disclosures, intelligently analyze plea offers, and consider waiving important rights.
The record reflects that questions regarding Tate's competency were not lurking subtly in the background, but were readily apparent, as his immaturity and developmental delays were very much at the heart of the defense. It is also alleged that his I.Q. of 90 or 91 means that 75% of children his age scored higher, and that he had significant mental delays.
Applying the principles enunciated in Robinson and Hill, we conclude that it was error to fail to, sua sponte, order a competency hearing pre-trial and, in any event, to deny the post-trial request for a competency hearing.
In light of the fact based professional doubts expressed post-trial concerning Tate's competency, Tate was entitled to a complete evaluation and hearing at that time, if for no other reason than to clarify the record, notwithstanding that the trial court may have been correct in concluding that Tate's demeanor and disinterest did not necessarily mean that he did not understand the proceedings and that his incompetency was not previously raised *51 despite defense counsel's continuing access to professional help. Under the principle recognized in Robinson, the trial court's reasoning is insufficient justification to override the testimony regarding Tate's reduced mental functioning, his possible inability to understand the charges and decisions to be made, the potential penalty, and the professional opinion that a competency evaluation and hearing was necessary. 383 U.S. at 384-85, 86 S.Ct. 836.
Upon remand, Tate is entitled to a new trial because a hearing at this late date to determine the present competency of a maturing adolescent cannot adequately retroactively protect his rights. See Jones v. State, 740 So.2d 520 (Fla.1999); Tingle v. State, 536 So.2d 202, 204 (Fla. 1988).
Here, if either a pre-trial or post-trial competency hearing had been ordered, the court would have been able to properly assess Tate's appreciation of the charges, the range and nature of possible penalties, determine whether he understood the adversary nature of the legal process, his capacity to disclose to his attorney pertinent facts surrounding the alleged offense, his ability to relate to his attorney, his ability to assist his attorney in planning his defense, his capacity to realistically challenge prosecution witnesses, his ability to manifest appropriate courtroom behavior, his capacity to testify relevantly, and his motivation to help himself in the legal process, as well as his ability to evaluate and make a decision concerning the plea offer.
At a minimum, under the circumstances of this case, the court had an obligation to ensure that the juvenile defendant, who was less than the age of fourteen, with known disabilities raised in his defense and who faced mandatory life imprisonment, was competent to understand the plea offer and the ramifications thereof, and understood the defense being raised and the state's evidence to refute the defense position, so as to ensure that Tate could effectively assist in his defense.
Significantly, the trial court's reasoning in rejecting the post-trial motion overlooks the argument that the proper inquiry was whether the defendant may be incompetent, not whether he is incompetent. Walker v. State, 384 So.2d 730, 733 (Fla. 4th DCA 1980).
We have considered Fuse v. State, 642 So.2d 1142 (Fla. 4th DCA 1994), relied upon by the state. In Fuse, this court found Robinson and Hill inapplicable. Fuse was an appeal from a denial of a motion for post-conviction relief. There, two separate psychologists had been appointed who had, pursuant to court order, conducted competency evaluations, while, here, there was no such order, and in Fuse, there was no evidence of unusual circumstances. Additionally, Fuse was fifteen years old at the time of the offense, Tate was only twelve, and while Fuse had been arrested fourteen times, this was Tate's first arrest.
We have considered, and reject, the additional issues that Tate's conviction violates the Florida or federal constitutions, or is invalid on grounds of statutory interpretation. We briefly address some of these issues here, as they are likely to be raised upon re-trial.
Tate first asserts that the legislature did not intend to prosecute children, who are not caretakers, for the crime of "aggravated child abuse," and that Tate did not have notice that section 827.03, Florida Statutes, could be applied to noncaretaker children, rendering the statute void for vagueness. Aggravated child abuse is the predicate for charging Tate with felony murder.
*52 This court must be guided by the plain and unambiguous language of the statute. Section 827.03 clearly specifies that child abuse occurs when a "person" abuses a child.
A statute is void for vagueness when, because of its imprecision, it fails to give adequate notice of what conduct is prohibited and, thus, invites arbitrary and discriminatory enforcement. Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). The benchmark for testing vagueness is whether a criminal statute affords a person of ordinary or common intelligence fair notice of what constitutes forbidden conduct. Bouters v. State, 659 So.2d 235, 238 (Fla.1995); State v. Hagan, 387 So.2d 943, 945 (Fla.1980).
This issue has been resolved adversely to Tate in K.B.S. v. State, 725 So.2d 448 (Fla. 2d DCA 1999). There, K.B.S., a fourteen-year-old juvenile, violated section 827.03(1) by knowingly or willfully abusing a child by intentionally burning the nine-year-old victim with a cigarette. Id. at 449.
In K.B.S., the Second District explicitly expressed its concern that the legislature had not included an age restriction in the statute, pointing out that this provision allowed for prosecution of a person of any age for child abuse as long as the victim was under age eighteen. See id. The court continued that "[t]his would appear to us to be an unintended result, and the legislature may well wish to review this issue." Id. As the state persuasively points out, despite this direct invitation, the Florida legislature has chosen not to amend the statute in the four years since K.B.S. was decided.
We are persuaded to concur with the Second District, and again urge the legislature to re-examine the dilemma posed by using this statute to prosecute conduct by a non-caretaker child against another child.
Tate also contends that his right to equal protection and due process was violated because he was treated more harshly than older juveniles.
Florida courts have long recognized that there is no absolute right requiring children to be treated in a special system for juvenile offenders. See State v. Cain, 381 So.2d 1361, 1363 (Fla.1980); Johnson v. State, 314 So.2d 573, 576 (Fla.1975).
Section 985.225, Florida Statutes, provides for adult sanctions for the youngest juvenile offenders who are charged by grand jury indictment, but permits a juvenile sanction for older offenders whose crime may have been committed with malice or premeditation because the law does not require an indictment. Specifically, for fourteen or fifteen year olds, the transfer statutes give the state three options when the juvenile has no prior violent offenses and committed an offense that is punishable by life in prison: (1) the juvenile court retains jurisdiction; (2) the state may seek an indictment under section 985.225; or (3) the state can prosecute the juvenile as an adult by the direct filing of an information under section 985.227(1)(a). On the other hand, if the juvenile is under fourteen years of age, only the first two options are available.
Tate argues that the inequity is that juveniles who, by prosecutorial discretion, are indicted by a grand jury, must be sentenced as adults, while other juveniles, sentenced when jurisdiction is procured by the filing of an information under section 985.227(1), may be sentenced as an adult or as a juvenile, a matter of judicial discretion.
This issue, however, has been recently raised before this court and rejected in Brazill v. State, 845 So.2d 282 (Fla. 4th *53 DCA 2003). While recognizing that children thirteen and younger may be prosecuted in adult court only by indictment, this court in Brazill opined that his attack was without merit, noting that,
This limitation on children thirteen and under is not properly viewed as a suspect classification scheme; rather, as the state points out, the statutory "requirement of an indictment is for the protection of the accused juvenile," because the grand jurors must concur in the prosecutor's charging decision. When the grand jury does not return an indictment, a juvenile thirteen and under is not subject to section 985.266(2).
(Citations omitted) Accordingly, applying Brazill, Tate's equal protection argument fails.
Tate further argues that section 985.225, Florida Statutes, violates the constitutional principle of separation of powers and Florida's non-delegation doctrine contained in Article II, Section 3, of the Florida Constitution. Tate asserts that under that provision, the legislature has unlawfully delegated its authority to define crimes and fix penalties by permitting the state attorney to seek an indictment for children under fourteen.
Tate likewise contends he was denied the opportunity to be tried as a juvenile without a judicial hearing. See Kent v. United States, 383 U.S. 541, 554, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). Acknowledging that such previous challenges to the Florida juvenile transfer statutes have failed, Tate invites this court to re-visit the constitutionality of section 985.225. See Cain. These challenges were also considered and rejected by this court in Brazill. 845 So.2d at 288-89.
We, additionally, reject Tate's state and federal due process claims. Tate contends that it was unfair to apply the felony murder doctrine to a child under fourteen when it has not been proven that the child has the capacity to form criminal intent, and that felony murder based on this statute should not apply to children under fourteen tried as an adult because children of this age cannot reasonably be held criminally responsible as an adult for aggravated child abuse.
The amicus briefs filed in this appeal address several sociological and scientific principles and argue that there is no proof that a child of Tate's age possesses an adult capacity to form a criminal intent. The legislature, however, has supplanted the common law defense of "infancy" with a statutory scheme, which includes section 985.225, specifying when a juvenile is capable of committing a crime under which he or she should be treated as an adult. See State v. D.H., 340 So.2d 1163, 1165 (Fla.1976)(holding that the common law presumption of incapacity of a minor between the ages of seven and fourteen years to commit a crime no longer applies).
The state also notes that not only is there substantial evidence of intent in this case, but that Tate was permitted to introduce testimony regarding his immaturity. See Bunney v. State, 603 So.2d 1270 (Fla.1992)(allowing maturity to be raised in a defense of lack of intent).
Tate also argues that his rights of privacy were violated because he was denied the confidentiality provisions afforded in the juvenile court.
While the issue before us in Brazill was not exactly the same, the reasoning in Brazill, addressing a strikingly similar issue, is compelling. On appeal, Brazill argued "that his due process rights were violated because he was denied the `rehabilitative aspect of juvenile court' solely because the state decided to procure an indictment." Brazill, 845 So.2d at 287. In rejecting Brazill's claim, this court explained *54 that there is nothing in the law or constitution requiring children be afforded a special system for juveniles who commit crimes. Id.; Cain, 381 So.2d at 1363. In Brazill, we further explained,
Because section 985.225 implicates no fundamental constitutional right, the applicable test for reviewing a substantive due process challenge to the statute is the rational-basis standard of review. See Shapiro v. State, 696 So.2d 1321, 1326-27 (Fla. 4th DCA 1997). Under this standard, a presumption of constitutionality attaches to a statute; the burden is on the party challenging the statute to establish that the statutory proscription lacks a rational relationship to a legitimate governmental interest.
* * *
Section 985.225 ... provides treatment as an adult for those offenses serious enough to be punishable by life imprisonment or death.... It is not unreasonable for the legislature to treat children who commit serious crimes as adults in order to protect societal goals.
Id. at 287-88. In Brazill, we also rejected the contention that section 985.225 is unconstitutional when applied to children under fourteen years of age. See id.
And, finally, we reject the argument that a life sentence without the possibility of parole is cruel or unusual punishment on a twelve-year-old child and that it violates Article I, Section 17 of the Florida Constitution and the Eighth Amendment of the United States Constitution. Tate argues that his sentence is greatly disproportionate to the sentences of other juveniles charged with similar acts.
In Blackshear v. State, 771 So.2d 1199 (Fla. 4th DCA 2000), this court rejected a cruel or unusual punishment challenge to three consecutive life sentences imposed for three robberies committed when Blackshear was thirteen. Id. at 1200. Upon his guilty plea, Blackshear was certified as an adult and placed on probation. Id. When he violated his probation at age twenty, he was sentenced to three consecutive life sentences. Id. There, we recognized that "[s]entences imposed on juveniles [as adults] of life imprisonment are not uncommon in Florida Courts." Id. at 1201-02.
In Phillips v. State, 807 So.2d 713 (Fla. 2d DCA 2002), the defendant was fourteen years old at the time he murdered an eight year old child. He was convicted of firstdegree murder and sentenced to life imprisonment without the possibility of parole. Id. at 714. The Second District concluded that the legislature can validly apply a sentence of life imprisonment without the possibility of parole to a juvenile convicted as an adult of first-degree murder. Id. at 720. After reviewing applicable principles, the Second District recognized that the Florida Legislature has fixed the second most severe penalty to the most severe crime recognized by our law. Id. at 717. In concluding that there was no violation of proportionality, the Phillips court noted:
The responsibility for making this choice rests with the legislature and is entitled to substantial deference. Further, we recognize that not every citizen nor even every member of this court will agree with the penalty established by the legislature for this crime as applied to this offender, but the legislative determination falls within the bounds of a rational conclusion regarding an appropriate prison term for the crime of firstdegree murder. Finally, we find that the penalty of life imprisonment is not grossly disproportionate to the crime of first-degree murder. If, as Justice Kennedy's opinion noted, "the crime of felony murder without specific intent to kill... [is] a crime for which no sentence of *55 imprisonment would be disproportionate," [Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)] [ ] then the sentence of life imprisonment for the specific intent crime of first-degree murder cannot be disproportionate. Accordingly, we hold that Mr. Phillips' sentence does not violate the proportionality principle mandated by the Eighth Amendment.
Id. at 717-18.
Tate's sentence is supported by a general verdict of first-degree murder. As in Phillips, the fact that Tate's sentence is to mandatory life without parole does not render it unconstitutional.
As to any other issues raised, we find no reversible error or abuse of discretion. The judgment and sentence are reversed and we remand for a new trial.
WARNER and HAZOURI, JJ., concur.
NOTES
[1] Rules 3.210 and 3.211, Florida Rules Criminal Procedure, require the trial court to determine the competence of a defendant when reasonable grounds exist to believe the accused may be incompetent and rule 3.210(a)(1) provides for a hearing "when necessary for a just resolution of the issues being considered."
[2] We note that Tate contends that Dr. Bourg-Carter's testimony was over a defense objection and an uncontroverted record that her twenty minute pre-trial competency assessment was not authorized by a court order and violated the speciality guidelines for forensic psychology. Even state forensic expert Dr. Brannon admitted that with children, you must "go deeper" to test their insights to see if they really understand.

Apparently Tate's trial counsel learned, after the fact, that Dr. Bourg-Carter claimed to have had the verbal consent of Lionel Tate, his mother, and a defense expert to confer with him for an evaluation.
[3] Dr. Bourg-Carter's examination was not court-ordered and lasted twenty minutes. She had been a licensed psychologist for six years, but was not board certified.