497 So.2d 1169 (1986)
James Armando CARD, Sr., Appellant,
v.
STATE of Florida, Appellee.
James Armando CARD, Sr., Petitioner,
v.
Louie L. WAINWRIGHT, Etc., Respondents.
Nos. 68862, 68846.
Supreme Court of Florida.
October 9, 1986.
Rehearing Denied December 22, 1986.
*1172 Larry Helm Spalding, Office of the Collateral Representative, Tallahassee, for appellent/petitioner.
Jim Smith, Atty. Gen. and Gary L. Printy, Asst. Atty. Gen., Tallahassee, for appellee/respondents.
ADKINS, Justice.
On June 3, 1986, this Court granted the application for stay of execution filed by James Armando Card, Sr., who was scheduled for execution the following morning. The stay of execution was filed in conjunction with a petition for writ of habeas corpus and an appeal from an order of the circuit court denying Card's motion to vacate sentence pursuant to Florida Rule of Criminal Procedure 3.850. We have previously affirmed Card's conviction of first-degree murder, robbery and kidnapping and sentence of death. Card v. State, 453 So.2d 17 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984).
The stay of execution was entered in order to afford this Court more time to review an issue of first impression. This opinion follows our previous request for supplemental briefing and an oral argument which addressed the various issues presented. We have jurisdiction pursuant to article V, section 3(b)(1) and (9), Florida Constitution, and dissolve the stay of execution and deny all relief.
The issue of first impression that was raised in both the motion to vacate sentence and petition for writ of habeas corpus is based on the following facts. The crimes for which the defendant was charged occurred in Bay County, Florida, located within the Fourteenth Judicial Circuit. On September 28, 1981, the Honorable W. Fred Turner entered a written order granting the defendant's motion for change of venue. The case was transferred from Bay to Okaloosa County, which is in the First Judicial Circuit. The trial was conducted in the First Judicial Circuit by Judge Turner of the Fourteenth Judicial Circuit. The Chief Justice of the Florida Supreme Court never appointed Judge Turner to hear the case in the First Circuit pursuant to article V, section 2 of the Florida Constitution, and Florida Rule of Judicial Administration 2.030(a)(3)(A). After Card was convicted in the First Judicial Circuit, Judge Turner issued an order transferring the file back to Bay County, where he imposed the death sentence in accordance with the jury's recommendation.
Card alleges that Judge Turner, a Fourteenth Circuit judge, lacked authority to conduct a trial in the First Judicial Circuit absent an order of temporary assignment from the Chief Justice of the Florida Supreme Court. As a result, petitioner contends, the First Judicial Circuit was without jurisdiction to hear the case because trials conducted in the First Circuit must be conducted by a judge authorized to preside in that circuit.
We agree with Card that Judge Turner was not authorized to preside over this cause in the First Judicial Circuit. Article V, section 2(b) of the Florida Constitution provides that the Chief Justice of the Florida Supreme Court may assign judges to temporary duty in any court for which the judge is qualified. See also Florida Rule of Judicial Administration *1173 2.030(a)(3)(A). The record does not contain an order from the Chief Justice authorizing Judge Turner to preside over Card's trial after the change of venue was granted. We must now examine the consequences of Judge Turner's oversight in failing to procure a temporary assignment from the Chief Justice.
The lack of an official assignment of a visiting judge to another circuit by the Chief Justice does not necessarily devoid that other court of subject matter jurisdiction. A technical flaw in assignment does not strip a circuit court of subject matter jurisdiction over a cause which is expressly conferred by law. Section 26.012(2)(d), Florida Statutes (1981), provides that the circuit court has jurisdiction over all felony trials. Further, article V, section 5(b) of the Florida Constitution provides that "[j]urisdiction of the circuit court shall be uniform throughout the state." Thus, once venue was properly transferred from the Fourteenth to the First Judicial Circuit, the latter court had subject matter jurisdiction over the cause, and indeed exercised such jurisdiction.
Card asserts that Judge Turner's failure to obtain a temporary assignment from the Chief Justice rendered the judgment void as opposed to voidable. Card must proceed on this basis because he failed to object to Judge Turner presiding over his case, and an objection to a void judgment may be lodged at anytime whereas an objection to a voidable judgment must be made immediately. See State v. King, 426 So.2d 12 (Fla. 1982). A circuit court judge who follows a transferred case outside of the circuit without obtaining an order of temporary assignment from the Chief Justice presides over the case as a de facto judge. Actions taken by a de facto judge are merely voidable and not void. Thus, the failure to timely object to Judge Turner's administrative oversight constitutes waiver.
A de facto judge is a judge who functions under color of authority but whose authority is defective in some procedural form. Black's Law Dictionary 375 (5th ed. 1979). The official acts of a de facto judge are valid. State ex rel. Hawthorne v. Wiseheart, 158 Fla. 267, 28 So.2d 589 (1946).
The presiding trial judge in this instance fits squarely within the definition of a de facto judge. As a circuit court judge, Judge Turner was acting under the color of authority. The procedural defect consisted of Judge Turner's failure to obtain an order of temporary assignment. Undoubtedly, had Judge Turner requested a temporary assignment from the Chief Justice it would have been granted.
The concept of a de facto judge is not new in Florida. In Wiseheart this Court employed the concept of de facto judge to validate the acts of a judge who was appointed in violation of a constitutional provision that prohibits a member of the legislature from being appointed to any civil office that was created, or the emoluments of which have been increased, during the time for which he was elected. In State ex rel. Booth v. Byington, 168 So.2d 164 (Fla. 1st DCA 1964), aff'd, 178 So.2d 1 (1965), the Court utilized the concept of de facto judge to validate actions taken by a county court judge who had allegedly passed the constitutionally mandated retirement age of 70 at the time he took the challenged actions. Similarly in Sawyer v. State, 94 Fla. 60, 113 So. 736 (1927), the court applied the concept of de facto officer to uphold the validity of an information signed, sworn to and filed by an assistant solicitor despite the requirement that only the county solicitor can sign, swear and file an information.
Other jurisdictions have also adopted the concept of de facto judge for the purpose of affirming judgments in cases that are strikingly similar to the case at bar. In Oklahoma Transp. Co. v. Lewis, 177 Okla. 106, 58 P.2d 128 (1936), the court held that a district court judge assigned as a special judge in a county outside of his regular district became a de facto judge of that court when he continued to hold court after expiration of his formal assignment. As a *1174 de facto judge, the court concluded, a trial in which he presided was not void and the failure to object at trial was deemed critical. In Martin v. Stumbo, 282 Ky. 793, 140 S.W.2d 405 (1940), the court held that a pro tem county judge who rendered a judgment as a pro tem judge of the quarterly court pursuant to a mistaken belief that his appointment as a county judge automatically made him a judge of the quarterly court, was a de facto judge and his acts were valid. Once again, a court determined that failure to make a timely objection regarding the power and authority of a judge constituted waiver.
The requirement that an objection to the authority of a de facto judge be timely made is not unique to our jurisdiction and is based upon sound principles of public policy. Our holding in Sawyer, regarding the requirement of a timely objection when challenging the authority of a de facto officer applies with equal force when challenging the authority of a de facto judge. In Sawyer, we noted "[n]either the common law nor our statutes favor the policy of a defendant in waiting until the last stage of the cause and attacking such defects by a motion in arrest of judgment, the granting of which would have the effect of unraveling the whole proceeding." 94 Fla. at 85, 113 So. 736.
Further, Card can establish no prejudice resulting from the lack of a technically proper assignment. He never objected to the fact that Judge Turner presided over his case in Okaloosa County. Neither did he move to disqualify Judge Turner pursuant to Rule 3.230(c), Florida Rules of Criminal Procedure. Card has never questioned Judge Turner's complete objectivity in both the conviction and sentence phase of the trial. Card received, by way of motion for change of venue, exactly what he requested, a trial before an impartial jury and an unbiased judge. Both procedurally and substantively Card received a fair trial. Significantly, Card's objection, raised years after the trial, reflects a mere procedural irregularity rather than an infringement on a fundamental constitutional right.
Judge Turner acted as a de facto judge in the First Judicial Circuit and Card's failure to object to Judge Turner's authority to preside over his case constitutes waiver of that issue. Thus, all orders signed by Judge Turner in the First Judicial Circuit are valid.
Card also contends, in both his petition for habeas corpus and motion for post-conviction relief, that Judge Turner erred in transferring the case back to Bay County for sentencing. We find no error. Of significance is the fact that the sentencing phase of the trial occurred in Okaloosa County in front of the very same jury which convicted Card. Following the jury's advisory sentence of death, Judge Turner merely ordered that the record be returned to Bay County where he later entered a written order sentencing Card to death. Judge Turner sentenced Card in Bay County as a matter of convenience. Card's attorney acquiesced to this procedure. We find no error. See Resnick v. State, 274 So.2d 589 (Fla. 2d DCA 1973).
We will now address the remaining issues raised in Card's motion for post-conviction relief. Card contends that the trial court erred in failing to conduct a pretrial competency hearing. In support, Card cites Hill v. State, 473 So.2d 1253 (Fla. 1985), in which we held that the trial court must conduct a pretrial hearing on the issue of whether a defendant is competent to stand trial when reasonable grounds exist to support a finding of incompetence. We reject Card's contention that a pretrial competency hearing was mandated in his case because Card failed to present the court with evidence indicating that he was incompetent to stand trial.
Prior to trial, Card was examined by two court-appointed psychologists for the purpose of determining whether he was competent to stand trial. Following examinations, both psychologists concluded that Card was competent to stand trial pursuant to the criteria set forth in Rule 3.211, Florida Rule of Criminal Procedure. After the initial reports of the two court-appointed *1175 experts were filed, the defense filed a motion for the appointment of a forensic psychiatrist to examine Card. The court acquiesced to this request. Although the forensic psychiatrist did not file his report with the court until a few months after the court issued its order finding Card competent to stand trial, the forensic psychiatrist also concluded that Card was competent. Further, although the various reports filed by the experts indicate bizarre conduct and behavioral problems, the trial court was never presented with evidence providing reasonable grounds to believe that Card was not competent to stand trial.
The contrast between the instant case and Hill is readily apparent. In Hill, we held that a pretrial competency hearing was mandated because, among other things, Hill had a history of grand mal epileptic seizures, mental retardation with communication problems, acquiescence in acceptance of guilt regardless of actual facts, and an IQ as low as 66, reflecting borderline intelligence. The pattern of bizarre conduct and behavioral problems presented to the court in the instant case does not compare to the factual predicate presented in Hill.
In a further attempt to prove that Card was incompetent to stand trial, and thus circumstances existed at trial which should have led the trial court to believe that serious doubts existed regarding Card's competency, Card belatedly presents this Court with two letters from psychologists addressed to defense counsel. Both of these letters were dated three days before the then scheduled execution and filed with this Court one day prior to the previously scheduled execution. At the outset, we find it necessary to warn that we view reports filed by psychologists hours before a scheduled execution with great suspicion, particularly in a case such as this when three experts have previously determined that the defendant was competent to stand trial.
In one letter, a clinical psychologist concludes that "[s]ubstantial issues relating to Mr. Card's competency to stand trial were unresolved by the reports of the experts filed with the courts." The letter goes on to critique the methods of examination employed by the three prior experts. The other letter belatedly presented to this court is from one of the two original examining psychologists. The psychologist concedes that additional information provided by Card's counsel indicates that "Card may have had a psychotic disturbance, possibly of organic origins." Neither letter concludes that Card was incompetent to stand trial. The additional letters presented to this court do not alter our finding that the trial court did not err in failing to conduct a pretrial competency hearing.
Our treatment of a subsequent psychologist's report in James v. State, 489 So.2d 737 (Fla. 1986), warrants discussion even though the report in James was presented to prove that James was incompetent to stand trial and the letters in the present case are proffered for the purposes of proving that circumstances existed prior to trial indicating that reasonable grounds existed to support a finding of incompetence. In James, we held that a report of a newly acquired psychologist which concluded that the original psychologist utilized antiquated testing procedures and that the defendant probably suffered from organic brain damage did not warrant a belated finding that he was incompetent to stand trial. In addition, we emphasized the fact that the subsequent report fell short of stating that the defendant was incompetent to stand trial. Similarly, we now hold that a letter from a psychologist criticizing the methods used by the original experts who found the defendant competent to stand trial, coupled with a belated letter indicating that the defendant may have had a psychotic disturbance do not, standing alone, warrant a finding that the trial court erred in failing to hold a pretrial competency hearing.
Card alleges that he received ineffective assistance of counsel during the guilt and penalty phases of his trial. We reject this claim. None of the factual allegations presented by appellant warrant a finding of ineffective assistance of counsel under the *1176 two-prong test enunciated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
466 U.S. at 687, 104 S.Ct. at 2064.
In regard to the guilt phase of the trial, Card alleges that the ineffectiveness of counsel is proven by counsel's motion for a continuance made two days prior to trial in which he alleged that he and cocounsel were not ready to defend Card. This allegation of ineffectiveness is completely rebutted by counsel's actions immediately prior to trial. Immediately prior to trial, counsel withdrew the motion for continuance and represented to the court that the defense was prepared to go forward to trial.
Card contends that counsel's failure to subpoena individuals whom Camille Cardwell claimed planned to rob a store where "people sent money orders and stuff like that" is inexcusable and proof of ineffectiveness. Camille Cardwell's claim was found to be inadmissible hearsay testimony and was therefore never presented to the jury. See 453 So.2d at 19-20. We refuse to find counsel ineffective because of his failure to subpoena the individuals in question. Although the better practice may have been to subpoena the individuals referred to by Camille Cardwell, we hardly see how this omission prejudiced the defense and deprived Card of a fair trial. Our finding on ineffectiveness is further supported by the fact that counsel issued numerous subpoenas and took an untold number of depositions of key witnesses prior to trial.
Card alleges that the trial counsel was ineffective in his failure to obtain and use various forms of allegedly exculpatory and impeaching evidence. A great deal of the allegedly exculpatory evidence was actually presented, just not in the manner that appellate counsel feels was most effective. To a large extent, Card is merely complaining that counsel should have used different methods to present potentially exculpatory evidence. For example, counsel chose to bring out the fact that there had been no blood on Card's clothes through cross-examination of a state witness as opposed to introduction of the clothes themselves.
Although counsel failed to present evidence that Card claims should have been presented, such omissions do not support a claim of ineffectiveness. For example, Card alleges that counsel should have been aware of telephone records that prove discrepancies in the testimony of a key state witness. While this may or may not be the case, counsel conducted a complete and extensive cross-examination of the key state witness and made numerous attempts, perhaps successfully, to destroy her credibility.
Card asserts that counsel was ineffective during the penalty phase of the trial for failing to present testimony that would have raised a doubt in the minds of the jury as to the guilt of the defendant. Specifically, Card alleges that counsel should have called Camille Cardwell to testify that others had planned to rob the Western Union that Card was convicted of robbing. While we recognize that the formal rules of evidence do not apply to penalty proceedings and hearsay testimony may be admissible, section 921.141(1), Florida Statutes (1981), we refuse to find counsel ineffective for failing to proffer the previously excluded testimony of Camille Cardwell. In addition, Card's allegation that counsel was ineffective for failing to present witnesses who would have testified about Card's difficult and impoverished upbringing is without merit. Dr. James A. *1177 Hold, a clinical psychologist, testified extensively about Card's unfortunate childhood. We refuse to render counsel ineffective for failing to proffer testimony that would have been entirely cumulative.
The final allegation presented in Card's motion to vacate sentence is that he was deprived of a competent psychological evaluation. This allegation was implicitly rejected by our previous rejection of Card's allegation that he was improperly denied a pretrial competency hearing. We now explicitly reject this allegation by finding that it lacks a factual basis.
The remaining issue in Card's habeas corpus petition is whether prior appellate counsel was ineffective for failing to assert that Judge Turner was without jurisdiction to preside over the trial because he failed to obtain an order of temporary assignment from the Chief Justice. Our discussion on this issue herein dictates that raising this issue for the first time on direct appeal would have been untimely and rejected. Counsel cannot be labeled ineffective for failing to raise issues which have no merit. See Jackson v. Wainwright, 421 So.2d 1385 (Fla. 1982), cert. denied, 463 U.S. 1229, 103 S.Ct. 3572, 77 L.Ed.2d 1412 (1983).
Accordingly, the denial of the motion for post-conviction relief is affirmed, the petition for writ of habeas corpus is denied and the previously entered stay of execution is vacated.
It is so ordered.
McDONALD, C.J., and BOYD, OVERTON, EHRLICH and SHAW, JJ., concur.
BARKETT, J., concurs in result only.