# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00624-COA

RAFEAL BENNETT A/K/A RAFEAL DEMOND BENNETT A/K/A RAPHAEL BENNETT                     APPELLANT

v.

STATE OF MISSISSIPPI                                                                 APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/26/2018 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | CYNTHIA ANN STEWART |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 08/06/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**J. WILSON, P.J., FOR THE COURT:**

¶1. Rafeal Bennett pled guilty to two counts of armed robbery. He later filed a motion for post-conviction relief (PCR). He alleges that (1) he received ineffective assistance of counsel because a lawyer who was briefly appointed to represent him long before he pled guilty had a conflict of interest and (2) the county court judge who accepted his plea and sentenced him lacked jurisdiction and authority. The circuit court denied Bennett's PCR motion. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. In December 2011, Bennett and two codefendants were indicted on two counts of

bank robbery. Bennett was released on bond, but in June 2013 a bench warrant was issued for his arrest because he failed to maintain contact with the court. It appears that Bennett was taken into custody on October 30, 2013. On November 7, 2013, the court appointed Ray Charles Carter, an attorney with the Hinds County Public Defender (HCPD), to represent Bennett. On November 12, 2013, Bennett waived arraignment and pled not guilty.

¶3.     On November 14, 2013, Carter moved to withdraw as counsel for Bennett. In his motion, Carter explained that HCPD already represented one of Bennett's co-defendants, Courtney Jones. Carter advised the court that there was a clear conflict of interest because Jones already had "a deal on the table to testify against" Bennett,[1] while "Bennett [was] also seeking any deals or favors he [could] get." By order signed on November 18, 2013, the court granted Carter's motion to withdraw and appointed Damon Stevenson to represent Bennett. Stevenson represented Bennett for the remainder of the case.

¶4.     On February 26, 2015, Bennett pled guilty to two counts of armed robbery. Hinds County Court Judge Melvin Priester conducted the plea hearing and accepted Bennett's plea. On March 3, 2015, Judge Priester sentenced Bennett to concurrent terms of thirty years in the custody of the Department of Corrections, with five years suspended and twenty-five years to serve. On March 19, 2015, Bennett filed a motion requesting reconsideration of his sentence. On July 7, 2015, Judge Priester denied the motion.

¶5.     On May 2, 2017, Bennett filed a PCR motion that asserted two claims for relief. First, Bennett alleged that his plea and conviction should be set aside because of Carter's conflict

---

[1] Jones did plead guilty about eight months later. However, Bennett's PCR motion alleged that Jones did not appear to have been sentenced.

2

of interest. Second, Bennett alleged that Judge Priester lacked jurisdiction and authority to accept his plea and impose his sentence because there was "no specific prior order assigning . . . Bennett's case to [Judge Priester]."

¶6. On March 26, 2018, the circuit court denied Bennett's PCR motion. The court found that Bennett "voluntarily and knowingly pled guilty . . . , thereby waiving any of his asserted claims." The court also found that Bennett's claim of a conflict of interest was without merit because Carter and HCPD "promptly withdrew" once they recognized their conflict and private counsel was appointed to represent Bennett. Bennett appealed.

## ANALYSIS

¶7. In PCR cases, we review the circuit court's conclusions of law de novo. *Worth v. State*, 223 So. 3d 844, 849 (¶15) (Miss. Ct. App. 2017), *cert. denied*, 233 So. 3d 819 (Miss. 2018). We review the circuit court's findings of fact for clear error. *Id.*

### I. Alleged Conflict of Interest

¶8. "Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial." *Kiker v. State*, 55 So. 3d 1060, 1066 (¶14) (Miss. 2011) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980)). That is exactly what Carter did in this case. Seven days after he was appointed to represent Bennett, Carter moved to withdraw and properly disclosed his office's conflict of interest. Four days later, the circuit judge allowed Carter and HCPD to withdraw. Nothing of substance occurred during Carter's brief appointment to represent Bennett. The circuit court also appointed a conflict-free attorney (Stevenson), who represented Bennett for

3

the remainder of the case, including his plea and sentencing fifteen months later. Bennett's

PCR motion does not make any complaint about Stevenson's representation of him. Nor

does Bennett indicate what more Carter or the circuit court should have done to resolve the

conflict. Carter's less-than-two-week appointment to represent Bennett is not the sort of

conflict that is ineffective assistance per se. We agree with the circuit court that this issue

is without merit.

## II.     Authority of the County Court Judge

¶9.     "The county court shall have jurisdiction over criminal matters in the county assigned

by a judge of the circuit court district in which the county is included." Miss. Code Ann.

§ 9-9-21 (Rev. 2014); *see also id.* § 9-7-3(5) (Supp. 2018) ("A circuit court judge shall have

the right to assign criminal matters to county court as provided in Section 9-9-21."). In

addition, "[i]n any county in cases where an overcrowded docket justifies the same, any

circuit judge may assign to a county judge in said county only, for hearing and final

disposition, any case, cause, hearing or motion, or any proceedings involved in the trial and

final disposition thereof." Miss. Code Ann. § 9-9-35 (Rev. 2014). Thus, without question,

a county court judge has jurisdiction to accept a plea and impose a sentence in a criminal case

assigned by the circuit court.

¶10.     Bennett claims that Judge Priester lacked authority and jurisdiction to sentence him

only because the circuit judge (Judge Green) did not enter a "specific prior order" assigning

the case to Judge Priester. This claim is also without merit. As a county court judge, Judge

Priester clearly has authority and jurisdiction to accept a plea and impose a sentence in a

4

circuit court case. *See id.* Neither the record nor the docket reflects that an order was entered assigning the case to Judge Priester. However, no statute specifically requires a written order of assignment.[2]

¶11.    Moreover, Bennett appeared before Judge Priester for his plea hearing and five days later for his sentencing hearing without objecting to Judge Priester's ability to accept the plea or impose a sentence. After he was sentenced, Bennett filed a motion for reconsideration of his sentence, but he still did not raise any objection to Judge Priester's authority to accept his plea or sentence him. The State's response to Bennett's motion stated, in part, as follows:

> On February 19, 2015, the Defense attorney and the State [were] notified of the special setting plea date for the Defendant after his request and that the Honorable Judge Priester would be handling the matter for Judge Green.
>
> On February 20, 2015, all parties agreed to a time and date, as well as allowing Judge Priester to handle the plea.

Bennett did not challenge the State's description of the case's history. Judge Green then entered an order directing that Bennett be transferred to the Hinds County Jail to appear in court for a hearing on his motion "before Judge Melvin Priester." After the hearing, Judge Green entered another order. Judge Green's final order stated that the "hearing on

---

[2] Section 9-9-35 provides that "[n]o special order evidencing said assignment shall be entered *on the minutes*, except in cases where a county judge is assigned the duty of opening and organizing a court where a grand jury is to be impaneled, in which case an order so assigning the said county judge to act shall be signed and entered on the minutes of the court on the opening day thereof." Miss. Code Ann. § 9-9-35 (emphasis added). No other statute specifically states that an order is necessary. Section 9-9-35 further provides that the county court judge may not "be compelled to accept any assignment except at his will." *Id.*; *see Overcrowded Dockets and the Appointment of County Judges*, Miss. Atty. Gen. Op. No. 2004-0312, *available at* 2004 WL 1833075 (July 23, 2004). Thus, Judge Priester had the right to decline the assignment, but it is obvious from the record that he accepted it. That is further evidence that had jurisdiction over the matter.

[Bennett's] motion to reconsider was completed before Judge Melvin Priester," that the motion "was denied by Court order," and that "[a]ll pending Court matters concerning [Bennett] ha[d] been concluded." Clearly, Judge Green was aware that Judge Priester had accepted the plea and imposed the sentence in this case. Under these circumstances, Bennett waived any objection to the lack of a written order assigning the case to Judge Priester.

¶12. The Florida Supreme Court considered a similar issue in *Card v. State*, 497 So. 2d 1169 (Fla. 1986). In that case, a circuit judge presided over a trial in another judicial circuit without first obtaining an order of temporary assignment from the Chief Justice of the Florida Supreme Court. *Id.* at 1172. The Florida Supreme Court held that the judge "was not authorized to preside over" the case outside of his home circuit without the order of temporary assignment. *Id.* The court stated, however, that this "technical flaw" in the assignment process did not necessarily void the conviction. *Id.* The court reasoned that an order of temporary assignment "[u]ndoubtedly . . . would have been granted" if it had been requested. *Id.* at 1173. And the court held that the defendant's "failure to timely object to [the trial court's] administrative oversight constitute[d] a waiver" of the objection. *Id.* at 1172.

¶13. We reach the same conclusion here. The circuit judge obviously intended to assign the case to Judge Priester, and Bennett clearly understood that Judge Priester was presiding and raised no objection. Indeed, Bennett did not even raise the issue in his motion for reconsideration of his sentence. Under these circumstances, Bennett's "failure to timely object [to this alleged] administrative oversight constitute[d] a waiver" of the objection. *Id.*

6

¶14.    The dissent argues that this issue is "jurisdictional" and "can never be waived."

However, the case that the dissent cites, *Welch v. Bryant*, 157 Miss. 559, 128 So. 734 (1930),

is inapposite.  In *Welch*, the Supreme Court held that a county court lacked jurisdiction to

decide a case on assignment from a chancery court for two reasons.  First, the plaintiff's

"civil rights" claim simply was not within the county court's limited jurisdiction over cases

in which the amount in controversy did not exceed $1,000.  *Id.* at 562-63, 128 So. at 735-36.

Second, by statute, the chancery court could only refer hearings on preliminary injunctions

to the county court, and the chancellor in that case had already granted a preliminary

injunction, meaning that any authority the county court could have obtained was already "at

an end" before the case was transferred.  *Id.* at 563-65, 128 So. at 736.  Thus, the issue in

*Welch* was not the mere absence of a written order of assignment.  Indeed, the chancellor had

entered a clear, written order referring the case to the county court.  *Id.* at 561, 128 So. at

735.  Rather, the jurisdictional problem in *Welch* was that the county court *could not* hear the

matter assigned to it, period.

¶15.    In contrast, Judge Priester clearly does have jurisdiction and authority to accept pleas

and impose sentences in felony cases assigned to him.  *See* Miss. Code Ann. § 9-9-21 ("The

county court shall have jurisdiction over criminal matters in the county assigned by a judge

of the circuit court district in which the county is included.").  The only alleged error in this

case is procedural.  Even if we assume that a written order should have been entered, *but see*

*supra* ¶10 & n.2, Bennett waived that issue by failing to object.  The dissent identifies no

authority for the proposition that the absence of a written order is a non-waivable

7

"jurisdictional" defect that can be raised for the first time years later in a motion for post-conviction relief.

**CONCLUSION**

¶16.    Bennett's claims are without merit.  Therefore, the judgment of the circuit court denying Bennett's PCR motion is **AFFIRMED**.

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE AND C. WILSON, JJ., CONCUR.  McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.**

**McCARTY, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶17.    Because an "administrative oversight" did not occur in this case but rather a failure to establish jurisdiction, we should reverse.  There was not a conflict of interest in this case, as well explained by the majority.  Yet the majority continues to find waiver of a jurisdictional issue.  Since a challenge to the constitutional or statutory power of a court can never be waived, I respectfully dissent.

¶18.    Jurisdiction matters in this case because circuit courts hear felony cases and county courts do not.[3]  "Subject matter jurisdiction deals with the power and authority of a court to

---

[3] Under the Constitution of 1890, the circuit courts "have original jurisdiction in all matters civil and criminal" save for chancery matters.  Miss. Const. art. 6, § 156.  The Legislature has made explicit that circuit courts "shall have power to hear and determine all prosecutions in the name of the state for . . . felonies[.]"  Miss. Code Ann. § 9-7-81 (Rev. 2014).  In contrast, by their nature alone county courts cannot hear felonies, since they "have jurisdiction concurrent with the justice court in all matters, civil and criminal of which the justice court has jurisdiction"—in other words, misdemeanors.  *See* Miss. Code. Ann. § 9-9-21 (Rev. 2014); Miss. Const. art. 6, § 171 ("The justice court shall have jurisdiction concurrent with the circuit court over all crimes whereof the punishment prescribed does not extend beyond fine and imprisonment in the county jail.").

consider a case." *E.M.C. v. S.V.M.*, 695 So. 2d 576, 580 (Miss. 1997). "As such, subject matter jurisdiction may not be waived and may be asserted at any stage of the proceeding or even collaterally." *Id*. (citation omitted).

¶19. So while a guilty plea can waive many things, it cannot waive subject matter jurisdiction. *See Joiner v. State*, 61 So. 3d 156, 158-59 (¶7) (Miss. 2011). For "the law is settled that with only two exceptions, the entry of a knowing and voluntary guilty plea waives all other defects or insufficiencies in the indictment"—those exceptions being "an indictment's failure to charge an essential element of the crime," and "lack of subject matter jurisdiction[.]" *Id*. (citation omitted); *Hooghe v. State*, 244 So. 3d 81, 86 (¶12) (Miss. Ct. App. 2017) (acknowledging the two exceptions). "And, of course, a guilty plea does not waive subject matter jurisdiction." *Jefferson v. State*, 556 So. 2d 1016, 1019 (Miss. 1989).

¶20. Many moons ago a case different in facts but similar in legal import reached the Supreme Court—where a father did not want his children riding on the local school bus, since he believed the driver was both "incompetent and reckless[.]" *Welch v. Bryant*, 157 Miss. 559, 128 So. 734, 735 (1930). The father sought an injunction in chancery court. *Id*. Oddly, the chancery court ordered the parties to be heard before the county court. *Id*.

¶21. The parties dutifully followed that direction, and on appeal the Supreme Court puzzled out the errors. *Id*. The first was that the case should have stayed in chancery. *Id*. at 736. More important to today's question, the Court ruled that "[t]he county court had no original jurisdiction of this case[.]" *Id*. For "[a] court of inferior jurisdiction cannot entertain a controversy which is not clearly within the comprehension of the law conferring

9

jurisdiction." *Id*.

¶22.     Anything done in the county court after the improper transfer was void. *Id*. In writing for the Court, Justice Griffith explained "the proceedings in this case before the county judge were coram non judice," or not even before a judge. *Id*. Critically, it did not matter "that all parties there appeared [in the county court], and consented to that proceeding . . . under the well-established rule that consent cannot confer jurisdiction of the subject[]matter." *Id*.

¶23.     Just as established in the criminal cases above, one cannot forsake jurisdiction—no more than one can wake up and decide that gravity no longer applies. *See Estate of Perry v. Perry*, 61 So. 3d 193, 198 (¶23) (Miss. Ct. App. 2010) (citing *Welch* and holding that "questions of subject-matter jurisdiction may be raised for the first time on appeal").

¶24.     Unlike in *Welch*, where the county court could never have jurisdiction, county courts can hear felonies when an express grant of jurisdiction has been conferred due to overcrowded dockets. Miss. Code Ann. § 9-9-35 (Rev. 2014). In this case, the county court could have jurisdiction—we just do not have an order allowing it to exercise that power. This missing order is not just bureaucratic paperwork. It is a grant of power from a superior court allowing the county court to perform a function vested in it by law.

¶25.     This reality is why the case from another state that the majority cites does not apply at all (other than to further support that there was no jurisdiction in this case). The Florida Supreme Court did not mind the "technical flaw" of a missing assignment of order in that case because it was a circuit judge sitting for a circuit court. *Card v. State*, 497 So. 2d 1169, 1173 (Fla. 1986). The court reasoned, "A technical flaw in assignment does not strip a

10

circuit court of subject[-]matter jurisdiction over a cause which is expressly conferred by law," and since that state's constitution and promulgated law "provide[] that the circuit court has jurisdiction over all felony trials," there was no error. *Id.* "Thus, once venue was properly transferred from the Fourteenth to the First Judicial Circuit, the latter court had subject[-]matter jurisdiction over the cause, and indeed exercised such jurisdiction." *Id.*

¶26.   If this case involved a transfer from one circuit court to another, or a special circuit judge sitting by Chief Justice's assignment, I could agree. Since it involves a county court hearing a case that can only be heard in the circuit court, I cannot agree.

¶27.   This question is not academic; the defendant's plea in this case has him serving time until the year 2040. With stakes this high, we must be steady in our assurance that the rules of assignment were precisely followed and that jurisdiction was explicitly conferred. We should not guess that the circuit court meant to do it; rather, we should review the record and rule upon the orders that are within it. There is no transfer order in this case, which is required to confer jurisdiction, and lacking that, we are bound to follow the precedent of nearly a century of caselaw and reverse.

¶28.   If not for the missing order, I would agree with the majority's conclusions on the ineffective-assistance-of-counsel issue. Because it is missing, I concur in part and dissent in part.

**McDONALD, J., JOINS THIS OPINION.**

11